CLEOTHA SAWYER *v*. STATE OF INDIANA.

[No. 771S204. Filed July 11, 1973.]

*A. Martin Katz,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

DEBRULER, J.—This case comes to us on appeal from the Lake Criminal Court, Honorable Vernon Sigler, Commissioner. Appellant was convicted of the offense of robbery (IC 1971, 35-13-5-6, being Burns § 10-4101) and sentenced to the Indiana Reformatory for not less than ten nor more than twenty-five years. He appeals on two grounds: (1) That the trial court erred in not sustaining his motion to strike witness Clifford Fry's in-court identification of appellant because Fry had been present at a photographic display which was both suggestive in nature and conducted without the presence of appellant's counsel even though appellant had already been arrested and charged with the crime; (2) Ineffective representation by his trial counsel.

On January 26, 1970, at about 6:00 p.m. two men entered the Butternut Bakery in Calumet Township. They walked to a display rack, picked up a cake and approached the checkout counter. At that time they announced they were holding up the store. One of the men pulled a shotgun from underneath his coat and came around to the back of the counter. Two workers behind the counter were ordered to take the money from the cash register and put it in a paper-bag. The other man ordered two customers in the store against the wall. He kept his hand in his right jacket pocket and told the men to hand over their wallets or he would blow their heads off. The holdup men left the bakery with about $150.00.

There were five State witnesses at the trial, four of whom were the workers and customers at the bakery the night of the incident. All four of these witnesses described the holdup men as Black and in their early twenties. The man with the shotgun was described as somewhat taller than the other man. One of the employees could not say whether or not the appellant was one of the men at the store because she testified that she had deliberately kept her head down during the robbery so as not to arouse the men's suspicions that she was studying their features. The other employee testified that appellant "looked like" the shorter of the two men but she could not be sure.

Both of the customers stated that it was the shorter man who told them to stand against the wall. He kept his hand in his jacket pocket the entire time they were in the shop. Both witnesses testified that the shorter man took their wallets and identified appellant as that man. The fifth State witness was a police officer who took a statement from appellant concerning the holdup. The statement was introduced and received in evidence over the objections of appellant but he does not urge the trial court's ruling on that point as error. He does, however, appeal on the court's ruling concerning his objection to the testimony of one of the customer-witnesses, Clifford Fry.

During the testimony of Clifford Fry appellant asked for and was granted permission to *voir dire* the witness out of the presence of the jury. On the *voir dire* appellant established that the police had come to Fry's house about two weeks after the robbery. They told Fry that they had arrested someone for the robbery and they wanted Fry to pick him out of some photographs they had. They showed him about twenty different photographs of Black males of various descriptions, out of which Fry picked three or four that resembled the men at the store. Fry went over these carefully and indicated who he thought were the holdup men.

After this *voir dire* appellant made a motion to strike witness Fry's identification testimony on the grounds that his in-court identification was tainted by a suggestive out-of-court photographic procedure, and further because appellant was deprived of his right to counsel at this post-arrest photographic display. The trial court denied appellant's motion and he now appeals that decision.

The Sixth Amendment to the Federal Constitution guarantees that the accused in a criminal prosecution shall have the assistance of counsel. In two related cases handed down in 1967, the United States Supreme Court interpreted this provision to provide for the right to counsel at a post indictment corporeal lineup. *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert* v. *California* (1967), 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178. The court held that the post indictment lineup was a "critical stage" of the criminal proceeding and one in which a defendant was entitled to be represented by counsel. Appellant now contends that a photographic display shown to a State witness after the defendant has been charged is not distinguishable from a corporeal lineup at the same stage of the proceedings and, under the *Wade* and *Gilbert* rationale, one conducted in the absence of counsel violates his Sixth Amendment rights and taints the in-court identification of the witness.

In the United States Supreme Court's recent decision in *U.S.* v. *Ash* (June 21, 1973), 13 Cr. L. Rep. 3217, however, it was specifically held that the Sixth Amendment does not grant the right to have counsel present at a post indictment photographic display. The court stated that this type of display was not a critical stage of the criminal proceeding since the accused was not present at the display and did not require aid in "coping with legal problems or assistance in meeting his adversary." Under the *Ash* decision therefore appellant's Sixth Amendment contention is without merit.

Appellant also contends, however, that the procedure used by the police at the photographic showup was impermissibly suggestive and therefore violated his right to due process. It has been recognized for some time that in the use of photographs to identify a defendant there is a potential danger that the procedure used may hinder or even prevent a true selection of the perpetrator of the crime by a witness. Both the United States and the Indiana Supreme Courts have held that a procedure which is so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification violates a defendant's right to due process. *Simmons* v. *U.S.* (1968), 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2 1247; *Emerson* v. *State* (1972), 259 Ind. 399, 287 N. E. 2d 867.

The procedure used by the police here does indicate a needless amount of suggestivity under the circumstances. Although this is not a situation where a single photograph was used, or where the defendant's photograph was somehow unique in relation to the others, it does appear that Fry was given information which could have, absent a substantial opportunity for independent origin, lead to a mistaken identification. Fry testified on *voir dire* that the police told him at the display that the suspects had been arrested and their pictures were included in the pile he was to examine.

Although a witness may occasionally make the assumption on his own that the police have a suspect and he is included

in the display, (*Coleman* v. *Alabama* [1970], 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387) the potential suggestivity of either a photograph or a corporeal lineup is heightened by the police specifically telling a witness that a person who has been arrested and charged with the crime is among the group. *U.S.* v. *Gambrill* (D.C. Cir., 1971), 449 F. 2d 1148. A witness may thus be lead to feel that he has an obligation to choose one of the participants in the display since the police evidently are satisfied that they have apprehended the criminal. The result may be that the witness strains to pick someone with familiar characteristics or someone who most resembles the actual criminal or the result may be that the witness will choose the one least dissimilar by the process of elimination. Such a comment as the one by the authorities here needlessly decreases the fairness of the identification process. The Supreme Court in *Simmons, supra,* at 972, warned that telling witnesses "about the progress of the investigation" was a factor which would increase the dangers of suggestivity. In *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d 562, we stated:

> "One area that is especially sensitive is the mental state of the witness as he approaches the confrontation. The police should take affirmative action to avoid giving the witness the idea that they have the man involved and what they are seeking is a confirmation from the witness."

We hold therefore that informing Fry that the suspects were in the group was impermissibly suggestive procedure. *Martinez* v. *Turner* (10th Cir., 1972), 461 F. 2d 261.

This finding alone, however, does not by itself mean that the trial court committed error by allowing Fry's identification of appellant stand after it had been established that an impermissibly suggestive procedure had been used in an out-of-court display. The in-court identification may nevertheless be admitted, even though the confrontation procedure was suggestive, if "under the totality of the circumstances" the in-court identification is reliable. *Neil* v. *Biggers*

(1972), 93 S. Ct. 375; *Stovall* v. *Denno* (1967), 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; *Simmons* v. *U.S., supra.*

The factors to be considered in deciding whether under the circumstances there was substantial likelihood of misidentification include:

"... the opportunity of the witness to view the criminal at the time of the crime. The witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers, supra.*

Fry's testimony on these points show that the robbery took place at 6:00 p.m. during the winter months in a bakery shop opened for business. We believe, absent indications to the contrary, a reasonable inference can be made that the store was lighted at the time. Fry was backed against the wall with appellant standing several feet in front of, and facing, him. He testified that the holdup took about two or three minutes and that he handed his wallet to the appellant. There was no testimony that either of the men wore masks. Indeed their attempts to purchase cake when they first entered the store indicates that there was nothing particularly peculiar about their appearance. The photo display was conducted about two weeks after the robbery. When questioned about his certainty in identifying appellant as the holdup man witness Fry replied, "There are certain things that you never forget, and that is how it is." We find, therefore, that in the totality of the circumstances set forth here there existed sufficient independent origin for the in-court identification and therefore the photo display was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons* v. *U.S., supra; Emerson* v. *State, supra.* The trial court made no error in allowing Fry's in-court identification of the appellant.

Appellant's final contention is that he was afforded inadequate representation by his trial counsel. The only instance

which he cites is the failure of counsel to file a motion to quash the arrest warrant because the underlying probable cause affidavit was dated the 25th of January, the day before the robbery. It may be assumed that this error was merely typographical in nature since this affidavit was filed on February 25, 1970, and the charging affidavit also bore the February date. In any event trial counsel's failure to file a motion could not have had any effect on the final outcome, or indeed any issue, in the case since even if the absent motion had been filed and granted a new warrant could have been easily filed. Such a technical oversight, if indeed it was one, can hardly be deemed to be ineffective representation. *Robbins* v. *State* (1971), 257 Ind. 273, 274 N. E. 2d 255.

Judgment affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; Givan, J., concurs in result.

NOTE.—Reported in 298 N. E. 2d 440.