LEROY LAWSON, JR. *v.* STATE OF INDIANA.

[No. 1-873A140. Filed January 28, 1974. Rehearing denied March 8, 1974. Transfer denied September 19, 1974.]

*Robert Howard Brown,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *Glenn A. Grampp,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant (Lawson) was charged with the crime of robbery by an affidavit. The cause

was submitted to a jury for trial, which jury returned its verdict of guilty as charged.

Lawson presents seven issues which he saved in his motion to correct errors, of which each will be identified and written on singularly or will be grouped with others and the grouping so indicated.

The defendant is charged with having, on January 12, 1972, grabbed the purse of Mrs. Odetta Pearman in the night time on a well lighted street at an alley in Terre Haute. At the time he grabbed the purse he was seen by Mrs. Pearman and in her efforts to keep from releasing the purse she was thrown to the pavement and bruised up and lost control of her purse, which was taken by Lawson, who fled on foot.

A Mr. and Mrs. Middleton were in a motor vehicle and saw part of the robbery and went to the aid of Mrs. Pearman, and after helping her to her feet, drove around in search of her attacker and observed a man walking in an unusual manner, which they determined to be the suspect, and whom they later identified as Lawson.

Some days later Mrs. Pearman was in an automobile with her son and observed Mr. Lawson with two other men outside a service station in Terre Haute; at that time she recognized him as her attacker and called the police.

Mrs. Pearman was called to the police station after Lawson was apprehended and given a book of approximately 100 "mug shots" which she went through and after which she picked out the photograph of Lawson, whom she identified as her attacker.

She was also permitted to see through a one-way mirror and observed and identified Lawson in the room behind the same, alone.

Middletons also went to the city hall in Terre Haute and were there after Mrs. Pearman had made her identification,

and they too examined the "mug shots." Middletons were in the same room with Mrs. Pearman but were far enough from her that she did not know what pictures they were observing. The Middletons, after going through the "mug book" of approximately 100 shots, each separately identified the picture of Lawson as the man they had seen walking peculiarly immediately after Mrs. Pearman had had her purse snatched.

Issues 1 and 2 presented for review will be grouped and treated as one under Rule AP. 8.3(A)(7). The first question presented is:

> "Did the Court commit error in allowing the testimony of State's witness, Odetta Pearman, relative to the identification of the defendant, for the reason that the in-court identification was tainted by improper pre-trial identification procedures."

The second question presented is:

> "Did the Court commit error in overruling the defendant's motion to strike the entire testimony of the State's witnesses, Mr. and Mrs. Middleton, concerning their own in-court identification of the defendant."

Lawson urges that "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned" and cites *Stovall* v. *Denno* (1967), 388 U.S. 293, 87 S. Ct. 1967; and further relies on *Simmons* v. *State* (1968), 390 U.S. 377, 88 S. Ct. 967, wherein the United States Supreme Court said that convictions based on eye-witness identification at trial following a pre-trial identification will be set aside on that ground if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

He urges error further in that it was unduly suggestive that the police department told Mrs. Pearman about the progress of the investigation and that they had a suspect before she made her identification of Lawson.

Lawson further contends that inasmuch as the court allowed the in-court identification, which he insists is contrary to the holding in *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, that the trial court committed reversible error.

Lawson contends that issue number 2 was reversible error in that the court overruled his motion to strike the entire testimony of State's witnesses, Mr. and Mrs. Middelton, concerning their in-court identification of the defendant. Here again he relies on *Simmons* v. *State, supra,* and *United States* v. *Wade, supra.*

The evidence of Mrs. Pearman was that she got a good look at Lawson when he grabbed her purse on a well lighted street and she scuffled with him; she testified that thereafter she saw him at a service station with other men after which she called the police to report the same.

It cannot by the furthest stretch of imagination be said that she was prejudiced in the identification by the police handing her "mug shots" for identification or in telling her they had a suspect, as the evidence is unquestioned that she identified him without suggestion from anybody and she called the police after she saw and recognized Lawson and therefore her in-court identification was proper.

In the case of *Martin* v. *State* (1972), 258 Ind. 83, 279 N.E.2d 189, 190, 191, 192, Justice Hunter wrote:

". . . *United States* v. *Wade, supra,* holds that the government is required to establish by clear and convincing evidence that the in-court identifications of the defendant were based upon identifications other than at the lineup. Several factors were mentioned upon which to base this determination. They are as follows:

(1) Prior opportunity to observe the alleged criminal act;

(2) Existence of any discrepancy between any pre-lineup description and the defendant's actual description;

(3) Any identification of another person prior to the lineup;

(4) Identification of defendant by picture prior to lineup;

(5) Failure to identify the defendant on a prior occasion;

(6) Lapse of time between the alleged act and the lineup description;

(7) Those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. See *United States* v. *Wade, supra,* 388 U.S. at 241, 87 S. Ct. 1926, 18 L. Ed. 2d 1149."

In the case at bar there was other evidence presented on the part of witness Pearman and witnesses Mr. and Mrs. Middleton to clearly identify the accused, Lawson.

Justice Hunter stated further in *Martin* v. *State, supra:*

"However, there is no need to remand the case if, assuming arguendo the denial of the motion to strike was error, there was other evidence present to clearly identify the accused.

'[T]he cases written by the Supreme Court of the United States on this subject do not require a reversal of the case, if it is clearly demonstrated that notwithstanding irregularities in pre-trial lineup there is positive in-court identification of the accused, which identification in no way depends upon observations made of the accused during the improper lineup.' *Fulks* v. *State* (1970), [255] Ind. [81], 262 N.E.2d 651, 653."

Mr. and Mrs. Middleton had seen Lawson shortly after the purse was snatched and observed his behavior and recognized him. They also identified him from examining a "mug shot" book at city hall and there is nothing in the record that was done in the furtherance of the investigation at city hall that would make their in-court identification erroneous.

It is only reasonable to determine from the facts we have hereinbefore related that there was a positive in-court identification of the accused, which identification in no way depends on observations made of the accused during the lineup which Lawson claims was improper.

The third issue presented for review is:

"Was there sufficient evidence to prove that there was a taking by fear to justify a conviction for robbery."

Lawson contends that the verdict is not sustained by sufficient evidence to prove that the taking from Mrs. Pearman was by fear as alleged in the affidavit.

The statute under which this action was commenced reads, in part, as follows, to-wit:

"10-4101 Robbery. Physical injury inflicted in robbery or attempt—Penalty. Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, . . ."

Lawson contends that although there was evidence of taking by violence there was no showing that it was by fear and accordingly the case must be reversed and relies for such proposition on *Crouch* v. *State* (1951), 229 Ind. 326, 97 N.E.2d 860. The affidavit omitted the words "by violence or".

Mrs. Pearman testified that when she had her purse snatched she first felt hands on her shoulder. She was asked the following question, to which she gave the following answer:

Q. "Now, when you felt the hands on your shoulder were you afraid?"
A. "Why, sure. You would be too. It is frightful not to know anybody is around."

The jury had the right to take into consideration under the facts of this case their own experience in the ordinary affairs of the lives of men and women and in so doing it is only reasonable for them to know that a woman who was having her purse taken from her by a stranger in the night time when she was alone would be placed in fear.

We are of the opinion there was sufficient evidence to sustain the verdict on the charge that the prosecuting witness was placed in fear.

The fourth issue for review is:

"Did the Court commit error in giving State's Instruction Number Three over the objection of defense counsel."

Said issue was waived in oral argument, as the issue had been determined by our Supreme Court in the recent case of *Fuller* v. *State* (1973), 261 Ind. 376, 304 N.E.2d 305, which involved the identical instruction.

The fifth issue for review is:

"Did the Court commit error by refusing to give defendant's tendered instruction number three."

Defendant's tendered Instruction No. 3 is as follows, to-wit:

"The material elements of the offense of robbery under the affidavit as drawn in this case which must be proved beyond a reasonable doubt by the State of Indiana are:
1. That the defendant took an article of value,
2. From Odetta Pearman,
3. By putting her in fear."

Again Lawson relies on the *Crouch* case, *supra,* to support his contention of error.

We agree that the instruction is a correct statement of the law, but we do not agree that any error was committed in refusing to give it, as the instruction had been covered in State's Instruction No. 3 which reads, in part, as follows:

"It is necessary that every material element of the crime charged against the accused should be proved by the evidence beyond a reasonable doubt, . . ."

The court's preliminary Instruction No. 2 was a copy of the statute defining the offense of robbery which, itself, sets out in a very short and concise manner the necessary elements constituting the offense. Inasmuch as defendant's tendered Instruction No. 3 was adequately covered by other instructions it was not error for the court to refuse defendant's tendered Instruction No. 3.

The sixth issue for review is:

"Did the Court. commit error by refusing to give defendant's tendered instruction number four."

Defendant's tendered Instruction No. 4 is as follows:

"Criminal statutes must be construed strictly against the State. Thus, if you have a reasonable doubt as to what the law is in this case, or if there is a reasonable dispute among you jurors as to the interpretation of any statutes or laws involved in this case which you cannot reconcile, it is your duty to give the defendant the benefit of any such reasonable doubt and adopt the construction of the law that most favors the defendant."

This instruction, if given, would have advised the jury that if they had a reasonable doubt as to what the law in the case was or there was a reasonable doubt among them as to the interpretation of the statutes or laws which they could not reconcile, then it was their duty to give the defendant the benefit of such reasonable doubt and adopt the construction of the law that most favored the defendant.

All that is required of the court is to instruct the jury as to what the law is and to tell them that they have the right to accept that law as given them by the court, together with the further right to disagree with the court and to construe the law to suit themselves and that they have no right to disregard the law. It is axiomatic that the rule pertaining to reasonable doubt pertains to the evidence adduced before the court or jury trying the cause and the same does not pertain to the law. The case of *Short* v. *State* (1954), 234 Ind. 17, 122 N.E.2d 82, relied on by appellant, supports only the first sentence of the instruction in question.

It is our opinion that the court properly refused defendant's tendered Instruction No. 4.

The seventh issue presented for review is:

"Did the Court commit error by refusing to give defendant's tendered instruction number five."

Defendant's tendered Instruction No. 5 is as follows:

"The Court instructs the Jury that the burden of proof in the case is on the State to prove to the satisfaction of the Jury, beyond a reasonable doubt, that the defendant is guilty as charged in the indictment, and unless you are so satisfied of his guilt beyond a reasonable doubt, you will find him not guilty. The law presumes every man to be innocent, and in this case, the burden of proof is on the State, and to entitle the State to a conviction of the defendant, the State must prove every material element of the offense charged, and this to the satisfaction of each member of the Jury beyond a reasonable doubt."

We have examined the instructions given the jury by the court and find that each segment of defendant's tendered Instruction No. 5 has been adequately covered by other instructions submitted to the jury, which instructions are as follows: Court's preliminary Instructions Nos. 3, 4, and 5, and court's final Instruction No. 1.

Inasmuch as defendant's tendered Instruction No. 5 was adequately covered by the trial court in giving the jury proper instructions as hereinbefore referred to, no error resulted from the court's refusal to give defendant's tendered Instruction No. 5.

Finding no reversible error, this cause should be and is by the court affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 306 N.E.2d 150.