RONNIE DALE HOPKINS *v*. STATE OF INDIANA.

[No. 1-574A88. Filed February 24, 1975. Rehearing denied March 31, 1975. Transfer denied July 14, 1975.]

*James H. Voyles, Symmes, Fleming, Ober & Symmes,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

ROBERTSON, C.J.—The defendant-appellant (Hopkins) is appealing his conviction of voluntary manslaughter. We find no reversible error and accordingly affirm his conviction.

The facts most favorable to the State show that Tille Townsend was found stabbed to death in the bedroom of her home. A police investigation revealed that a Dr. Stiglitz had seen a man, later identified as Hopkins, near the Townsend home on the night the death had occurred. Stiglitz told police that he had seen Hopkins twice in the early morning hours and once several hours later as Hopkins emerged from an apartment near the Stiglitz's home.

The police also discovered Hopkins' palm print on a window sill of Townsend's home. The window had apparently been forced open. A shoe print under that window matched a pair of Hopkins' shoes. A shoe polish stain on Townsend's bedspread matched with polish found in the apartment in which Hopkins was staying.

Hopkins was charged with first degree murder and subsequently convicted by a jury of voluntary manslaughter.

Hopkins first argues that the arrest warrant was unsupported by probable cause and was improperly filed.

A probable cause affidavit is sufficient for the issuance of an arrest warrant when the allegation of a crime is supported by enough underlying facts to allow a neutral judicial officer to make an independent determination as to probable cause. *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N.E.2d 500. The affidavit used in this case contained information detailing the evidence discovered by police including the finding of the deceased, that the death was by stabbing, the finding of Hopkins' palm print, and that Hop-

kins was seen in the area of the Townsend home. We are of the opinion that the affidavit did establish probable cause.

Hopkins also argues that the arrest warrant probable cause affidavit and affidavit for first degree murder were not properly filed as required by Ind. Ann. Stat. § 9-1001, 35-1-17-2 (Burns Code Ed.) which reads:

> "Issuance of warrant or summons. (a) When an indictment is found or an information filed against a person charging him with the commission of an offense, the court or a judge thereof shall, subject to the provisions of subsection (b) (of) this section, direct the clerk to issue immediately a warrant of arrest returnable forthwith."

We do not agree that the lack of filing (if such was the case) offended the purpose of this statute. Although the warrants are rather informal in appearance and did not bear a file stamp the documents were issued the same day and signed and dated by the proper official. This, coupled with the fact that Hopkins cites no authority in support of his argument, would seem to negate any error.

Hopkins next argues that the search warrants were defective because probable cause was not stated within the body of the warrant and that they granted discretion to the serving officers.

Ind. Ann. Stat. § 9-602, IC 35-1-6-2 (Burns Code Ed.) says that no warrant shall issue without the filing of a probable cause affidavit. The example in the statute indicates that the information constituting probable cause may be set forth in the body of the search warrant.

The search warrants in this case stated that an affidavit is "attached hereto and made a part hereof". Although the statute is silent about attaching of a separate probable cause affidavit we believe it satisfies the statute if the affidavit is referred to in the warrant and attached to the warrant. *See: McAllister* v. *State* (1974), 159 Ind. App. 340, 306 N.E.2d 395.

Hopkins also says the warrants granted discretion to the police in that officers seized two pairs of shoes, instead of

one pair as called for in the warrant, and that a third item was taken from a room other than the one in which Hopkins was arrested.

In *Hall* v. *State* (1971), 255 Ind. 606, 266 N.E.2d 16, our Supreme Court quoted *United States* v. *Robinson* (N.D. Ind. 1968), 287 F. Supp. 245, for the proposition that if in the course of a search the police discover items not named in the warrant which might have been seized in a search incident to an arrest, then those items may also be seized, pursuant to the search warrant. We have found the search warrants were valid and it does not seem that there was such wide ranging discretion in the police officers simply because they seized two pairs of shoes instead of one.

Also, the seizure of the shoe polish and rag found in an adjacent room does not seem improper. The officers were lawfully on the premises under either the arrest or the search warrant. Further, it appears from the record that Gerald Claphane was the lessee of the apartment while Hopkins was simply staying there. When Hopkins was arrested the police questioned Claphane about the shoe polish; Claphane said there was such polish on the premises and retrieved the shoe polish and rag for the police from the drawer of a nearby dresser. The police themselves did not search the dresser or the room in which the dresser was situated. The seizure of the shoe polish was not improper since it was not the object of a search by police. *Boys* v. *State* (1973), 261 Ind. 413, 304 N.E.2d 789.

The next issue is whether the procedure followed by police in conducting a line-up violated Hopkins' rights. Hopkins contends he was denied counsel, and that the procedures were unduly suggestive.

We find that Hopkins was in fact denied counsel at his line-up. Further, there is some evidence that police indicated to Dr. Stiglitz that there was a suspect in the group which was exhibited. We must agree that either procedure alone would

taint the line-up and the question thus becomes whether any in-court identification is supported by sufficient independent facts. *Hutts* v. *State* (1973), 157 Ind. App. 83, 298 N.E.2d 487; *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440; *Lawson* v. *State* (1974), 159 Ind. App. 216, 306 N.E.2d 150.

The evidence is that Stiglitz observed Hopkins three (3) times on the morning of the homicide, and the third time Stiglitz confirmed that Hopkins was the person seen earlier near Townsend's home. Further, Stiglitz was able to give a reasonably accurate description of the subject to police. Given these facts, we must conclude there was an independent basis for Stiglitz's identification of Hopkins.

The fourth issue is whether the trial court erred in granting an extension of time in which to try Hopkins, thereby violating Ind. Rules of Procedure, Criminal Rule 4(A). Specifically, Hopkins argues that he should have been tried on or before November 10, 1973, but was in fact brought to trial November 27, 1973.

The State argues that it did in fact comply with the requirements of CR. 4(A) by stating in its motion for extension that:

"3. Due to congestion of the Owen Circuit Court, the next available date for trial of this Defendant is November 27, 1973.

4. This Defendant cannot be brought to trial before November 27, 1973 due to the congestion of the Owen Circuit Court calendar."

Hopkins contends that there is nothing in the record to substantiate the State's allegation of congestion, and that such substantiation should be required before an extension of time is granted.

The State asserts that it has alleged facts called for by the rule, and that there was no need to substantiate the al-

legation of congestion since the trial court could take judicial notice of its own calendar.

Although Hopkins agrees that a court has knowledge of its own calendar, he asserts that CR. 4(A) "on its face" requires that some record of the congestion be made.

CR. 4(A) states that an attorney seeking a continuance for reasons of court congestion "shall make such *statement* in a motion for continuance" (Our emphasis). There can be no dispute that the State made such a statement in its motion. We therefore hold that when a motion for extension is properly before a court, the court may take judicial notice of its own calendar, and grant the motion based on such notice without further noting such congestion in the record.

Thus, though Hopkins was tried beyond the 6 month limit in CR. 4(A), the extension was properly granted and there was no error.

The next issue is whether Hopkins was denied a fair trial because jury members were not called in the order in which the names were drawn for jury service.

Hopkins contends that Ind. Ann. Stat. § 4-7118, IC 1971, 35-15-22-1 requires that those called first for jury duty be called first to sit on a particular jury. The pertinent language of the statute is:

> "Provided, That the order of names as listed in the panel and as called for service shall be the *same* order as that in which the names are drawn from the box, as herein provided.

> The sheriff or bailiff shall then call the jurors to the jury box in the same order as that which their names are drawn from the box and certified thereto. [Acts 1937, ch. 156, § 1, p. 839; 1959, ch. 38, § 1, p. 101; 1967, ch. 181, § 1, p. 379.]"

Given the above statute we must agree that jury members should be called in the same order as their names were drawn for jury duty. However, we are not prepared to state that non-compliance with the statute is sufficient error to deny Hopkins' a fair trial. Hopkins is

unable to demonstrate how he was harmed by this particular irregularity, and is unable to cite authority in support of his contentions. Therefore, while the procedure may have been error it was harmless error. TR. 61; *Martin* v. *State* (1974), 261 Ind. 492, 306 N.E.2d 93; *Taylor* v. *State* (1973), 260 Ind. 264, 295 N.E.2d 600; *Johnson* v. *State* (1972), 257 Ind. 682, 278 N.E.2d 577.

The sixth assignment of error is that the trial court erred in the admission of certain demonstrative and testimonial evidence. In all, Hopkins objects to twenty-six (26) pieces of physical evidence, and the asking of a few omitted questions.

With regards to the physical evidence, Hopkins contends the evidence was merely cumulative, and served neither to prove nor disprove any material issue. However, beyond such assertions, Hopkins does not state how the admission of such evidence adversely affected the trial of his case.

It is the established law in this State that the admission of evidence is a matter within the sound discretion of the trial court. *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N.E.2d 341; *Hubble* v. *State* (1973), 260 Ind. 655, 299 N.E.2d 612; *Freeman* v. *King* (1967), 141 Ind. App. 655, 231 N.E.2d 161. Absent a clear abuse of such discretion the action of the trial court will be upheld. We find no such abuse of discretion in the admission of the above evidence.

Further, we hold it was within the discretion of the trial court to permit the State to ask an omitted question. *White* v. *Weinhold* (1961), 132 Ind. App. 656, 172 N.E.2d 219; *Waugaman* v. *Gary Methodist Hospital of Gary, Ind.* (1972), 151 Ind. App. 279, 279 N.E.2d 240. However, Hopkins also argues that the trial court improperly involved itself in the trial by asking him a question, thereby calling attention to State's error.

We recognize that a trial judge should not become an advocate for either party. *Kennedy* v. *State* (1972), 258 Ind. 211,

285

84

280 N.E.2d 611. However, in the present case, the judge asked but one question, and in fact sustained an objection to his own question. Although the court's question may have prompted State action, we find no reversible error in the court asking the question, or in permitting the State to ask the omitted questions. *Edmonds* v. *State* (1966), 247 Ind. 332, 215 N.E.2d 547.

Hopkins next argues that he was prejudiced because the in-court identifications of two witnesses were tainted by an improper photographic display.

The display consisted of at least seventeen (17) photographs, and at least six subjects had hair color similar to Hopkins. However, Hopkins argues that even though police did not prompt a selection, any identification was invalid because the display was thirteen (13) days after his arrest. While we may agree that the time factor should be considered, standing alone it is not sufficient to indicate "a substantial likelihood of mis-identification at trial." *Parsley* v. *State* (1973), 261 Ind. 106, 300 N.E.2d 652; *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E.2d 867. We find no error in the admission of these two in-court identifications.

The next question presented is whether a statement given by Hopkins to police was properly admitted into evidence. Hopkins argues that the statement was not voluntarily given, and was, therefore, in violation of Ind. Ann. Stat. § 9-1634, IC 1971, 35-5-5-1, and constitutional guarantees.

The facts establish that Hopkins did sign an advice of rights form before the statement was given. Further, a hearing on voluntariness was held and there was some evidence that Hopkins was aware of the charges and the possible questions to be asked. The above statute specifically designates the trial judge as the person who shall determine voluntariness. We find that a proper hearing was held, and that there was sufficient evidence for a finding that the statement was voluntarily given. There was no error since the decision of the trial court was not clearly

erroneous. *Layton* v. *State* (1973), 261 Ind. 251, 301 N.E.2d 633.

Hopkins next contends the trial court erred in overruling his motion for mistrial which was filed after a witness commented on the possibility of a psychiatric examination of Hopkins. It is argued that the admonition by the trial court to disregard the comment was insufficient to correct the damage done.

We cannot agree with Hopkins' contention. The remark complained of was the only one of its kind. It does not appear there was a deliberate attempt by the State to place such evidence before the jury. Given the isolated nature of the comment, and the court's prompt admonition, we must presume that any error was corrected. *Prather* v. *State* (1973), 158 Ind. App. 61, 301 N.E.2d 667; *Ballard* v. *State* (1974), Ind. App., 309 N.E.2d 817.

Next, Hopkins argues that it was error for the trial court to give State's instruction on circumstantial evidence. Hopkins contends that the instruction does not properly state the Indiana law on the subject.

Whatever merit Hopkins' argument may have loses force when we note that the law as Hopkins would state it is contained in his own instruction, which was given by the court without objection. Reading the instructions as a whole we find no error in the giving of State's instruction. *Gordy* v. *State* (1974), 262 Ind. 275, 315 N.E.2d 362.

Hopkins final argument is that the evidence was not sufficient to sustain his conviction of voluntary manslaughter. Specifically, Hopkins contends there was no evidence of the essential element of "sudden heat".

We have searched the record and must agree with Hopkins that there is no evidence of provocation giving rise to "sudden heat". The record is void of any confrontation, argument, or fight. However, even though there was no evidence that the homicide occurred "in a sudden heat", we will not say as a matter of law that such an omission amounts to reversible error.

Historically, manslaughter has been treated as a lesser included offense of murder in this State, even after the manslaughter statute was bifurcated in 1969 to distinguish between voluntary and involuntary manslaughter. IC 1971, 35-13-4-2 (Burns Code Ed., Supp. 1974) ; *Robinson* v. *State* (1974), Ind. App., 309 N.E.2d 833, *rev'd* on other grounds 262 Ind. 463, 317 N.E.2d 850; *Barker* v. *State* (1957), 238 Ind. 271, 150 N.E.2d 680; *Mimms* v. *State* (1967), 249 Ind. 168, 231 N.E.2d 151; *Gatchett* v. *State* (1973), 261 Ind. 109, 300 N.E.2d 665. The rule has been that if there is evidence which would support a conviction for murder in either degree, then the jury has the right to find a defendant guilty of voluntary (or involuntary) manslaughter as a lesser included offense, even in the absence of proof of "sudden heat".

Taking only the evidence most favorable to the State and the long line of judicial precedents, we cannot reverse Hopkins' conviction for the lesser offense of voluntary manslaughter.

Judgment affirmed.

Lowdermilk, J., concurs; Hoffman, J., concurs by designation.