Ervin HALL and Joe Bray, Jr.,
Appellants-Defendants,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 4–581A2.

Court of Appeals of Indiana,
Fourth District.

June 14, 1982.

Daniel L. Toomey, Toomey & Woloshansky, Merrillville, for appellants-defendants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Appellants Ervin Hall (Hall) and Joe Bray, Jr. (Bray) appeal their convictions for robbery, Class C felony, and robbery, Class B felony respectively.

We affirm.

## FACTS

Peoples Gas, Inc., a Colias family corporation, was in the fuel oil business in northern Lake County, Indiana in 1979. On August 27th of that year, Emily Colias and her grandmother were in the firm's Hammond office. About 9:30 a. m., they heard a knock on the door. The grandmother unlocked the door to accomodate a man outside she thought wanted to order fuel oil. This man entered the premises, produced a handgun, and demanded money. A second man, unarmed, followed the first into the office and stood by the doorway. The first man ordered the women to open the safe, and they complied.

The men took all the cash, stock certificates, truck titles and other items from the office safe and cash register and left the premises. These items totaled about $55,000 in value. The men were in Emily's and her grandmother's view for approximately five minutes.

Although her grandmother was too shaken to make any identification, Emily assisted the police in making composite pictures of the suspects. She viewed hundreds of pictures on two separate days thereafter, but could not identify the suspects from those photographs. At that point the Hammond Police Department had no leads.

On September 11th, however, one Rachael Brooks contacted Officer Havill, the investigator on the case. She identified the defendants as the perpetrators of the crime, validating her identification by telling the officer facts concerning the crime known to him but which had not been made public. The police went to the address Rachael had given them and arrested Bray. Hall was not there at the time.

The police took a polaroid snapshot of Bray, placed it in one of the books of photographs Emily had viewed previously, and asked her to look through these books again.

Each book contained approximately 100 photographs, three photographs to a page. The police did not tell her either suspect's picture was in the books, nor did they suggest at any time she was looking at one of the robbers. Emily positively identified Bray's photograph as being one of the perpetrators of the robbery. Although Hall's picture was also in the books Emily viewed, she did not identify him as the other robber.

The next day, however, Emily did identify Hall through a more recent photograph the police had obtained of him in the interim. Emily testified at trial she had a good opportunity to observe both defendants at close quarters, the lighting was good, and she was wearing her contact lenses.

## ISSUES

Appellants present the following issues for our consideration:

1. Whether the trial court erred in permitting Emily to make an in-court identification since the out of court photographic identification procedure was so impermissively suggestive as to give rise to the substantial likelihood of misidentification.

2. Whether the trial court erred in denying Hall's motion for severance.

## DISCUSSION AND DECISION

■ Before reaching these issues, however, we must deal separately with Bray's attempted appeal. He was sentenced December 23, 1980, and his motion to correct errors was filed February 27, 1981, sixty-six days after his sentencing. Thus, as a motion to correct errors, it was not timely filed. Failure to timely file a motion to correct errors precludes appellate review. *Skolnick v. State*, (1981) Ind., 417 N.E.2d 1103, Ind. Rules of Procedure, Trial Rule 59(C).[1] The pleading Bray filed, however, was entitled a "Belated Motion to Correct Errors" in an apparent attempt to overcome the effects of the late filing. Such cases are governed by the post-conviction remedy rules of our Supreme Court.

---

1. T.R. 59(C) reads as follows:

"(C) Time for filing: Service on judge. A motion to correct error shall be filed not later than sixty [60] days after the entry of a final judgment or an appealable final order. A copy of the motion to correct error shall be served, when filed, upon the judge before whom the case is pending pursuant to Trial Rule 5."

Ind. Rules of Procedure, Post-Conviction Remedies, Rule PC 2 in part provides:

"SECTION 1. Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion for new trial, where:

"(a) no timely and adequate motion to correct error was filed for the defendant;

"(b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and

"(c) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule.

"The trial court shall not consider the merits of the motion, but shall determine whether there are grounds for allowing the belated motion to correct error to be filed. Any hearing on the petition shall be conducted according to Sec. 5, Rule PC 1.

"If the trial court finds such grounds, it shall permit the defendant to file the motion, and the motion shall then be treated for all purposes as a motion to correct error filed within the prescribed period.

"If the trial court finds no such grounds, it shall deny defendant permission to file the motion. Defendant may appeal such a denial and the only assignment of error required is that the trial court ruling is contrary to law. Jurisdiction for such appeal shall be determined by reference to the sentence originally imposed."

Here Bray filed no petition for permission to file a belated motion to correct errors before he filed his belated motion. The question then becomes whether a petition for permission to file a belated motion to correct errors must be filed and acted upon before such motion can be filed in the trial court.

The filing of such petition is mandatory. The rule provides:

"*The trial court shall not consider the merits of the motion,* but *shall determine* whether there are grounds for allowing

the belated motion to correct error to be filed...." (emphasis supplied.)

PC 2, Section 1.

■ "If the trial court finds such grounds," permission can be granted to file it, but only *after* the prescribed determination has been made by the trial court. Because no petition was filed or determination made by the trial court on this subject, this appeal as to Bray must be dismissed. Filing of a petition for permission to file a belated motion to correct errors and the trial court's ruling thereon are jurisdictional matters so far as this court is concerned. However, such dismissal is without prejudice to Bray's right to file such petition with the trial court and proceed under the provisions of PC 2, Section 1 to perfect his appeal as therein provided.

## I.

### THE PHOTOGRAPHIC IDENTIFICATION PROCEDURE

■ As a general rule, identification procedures leading up to in-court identifications are impermissibly suggestive only if the totality of the circumstances of prior confrontation were so unnecessarily suggestive and conducive to irreparable mistaken identification as to deprive the defendant of due process of law. *Frasier v. State,* (1974) 262 Ind. 59, 312 N.E.2d 77. The question then becomes, were the identification procedures used in this case impermissibly suggestive?

After Ms. Brooks had identified Bray and Hall as the perpetrators of the crime, Officer Havill telephoned Emily and asked her to view more photographs. He testified as to his conversations with her on the subject as follows:

"Q. Do you recall what you said to her, you know, what the reason you wanted her to come down to the station, what the reason was?

"A. It would have been that I had a suspect in custody, and I wanted her to come down and view some pictures.

"Q. Do you recall if you told her you had two suspects you wanted her to look through some photographs, and you had a couple of suspects in there?

"A. I think that's exactly how I said it. I had a couple of suspects and I wanted her to come down and some (sic) view some photos.

"Q. When she came down to look at the photos, did you tell her anything about how you arrived at these suspects?

"A. Yes, Sir.

"Q. What did you tell her?

"A. I told her a girl had called or had come in and talked to me and had gave me details that I knew she knew what she was talking about, and she had implicated two subjects. One was her boyfriend.

"Q. And you told her those photographs were in this book, is that right?

"A. I told her to come down and view some more photos. I presumed she would think they were in there. I didn't say there are two photos I want you to pick out.

"Q. When she picked out the picture of Joe Bray, did you tell her that was one of the suspects?

"A. After she positively identified it and read the name, I said, 'Are you one hundred percent sure if this is the subject?' And she said, 'Yes', and I said, 'That's one of them.'

.    .    .    .    .

"Q. Now, once again, correct me if I'm wrong, but after she viewed the pictures and identified Bray on the 12th, did you tell her to come back, that you would have her come back when you got a more recent photograph of the suspect, the other suspect?

"A. I think what I told her, I was going to attempt to get a more recent photograph and have you view some more pictures, and eventually I will have you come back, yes.

"Q. So implying that the other individual's picture was in there, but she didn't pick it out?

"A. I told her it was in there, but she didn't pick it out. I told her, 'The other picture is in there and you didn't pick it out.' "

■ It is apparent the potential suggestivity was heightened by Officer Havill's conversations with Emily prior to her identification of Hall. As DeBruler, J. said:

"[T]he potential suggestivity of either a photograph or a corporeal lineup is heightened by the police specifically telling a witness that a person who has been arrested and charged with the crime is among the group.... The Supreme Court in *Simmons* [*v. United States*, 390 U.S. 377], *supra*, 88 S.Ct. [967], at 972 [19 L.Ed.2d 1247], warned that telling witnesses 'about the progress of the investigation' was a factor which would increase the dangers of suggestivity. In *Parker v. State* (1970), Ind., 261 N.E.2d 562, we stated:

'One area that is especially sensitive is the mental state of the witness as he approaches the confrontation. The police should take affirmative action to avoid giving the witness the idea that they have the man involved and what they are seeking is a confirmation from the witness.' "

*Sawyer v. State*, (1973) 260 Ind. 597, 298 N.E.2d 440, 443, *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 243. We find Officer Havill's conversations with Emily regarding the photographs was impermissibly suggestive procedure. *Sawyer, supra*, 298 N.E.2d at 444; *Martinez v. Turner*, (10th Cir., 1972) 461 F.2d 261. Such procedure, however, is not fatal as to her in-court identification.

■ Our Supreme Court has held the in-court identification may be admitted even though the confrontation procedure was suggestive, if "under the totality of the circumstances, the in-court identification is reliable." *Sawyer, supra*, 298 N.E.2d at 444; *Neil v. Biggers*, (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Stovall v. Denno*,

(1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Identifications subsequent to the suggestive procedure need be excluded only if the original impropriety is likely to result in later misidentification. *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 244; *Poindexter v. State*, (1978) Ind., 374 N.E.2d 509.

■ An in-court identification is admissible, in spite of an impermissibly suggestive pre-trial identification procedure, where it is shown by clear and convincing evidence the in-court identification is based upon observations made independently of the proscribed procedure. *White v. State*, (1982) Ind., 433 N.E.2d 761; *Johnson v. State*, (1982) Ind., 432 N.E.2d 403; *Kusley v. State*, (1982) Ind., 432 N.E.2d 1337; *Remsen v. State*, (1981) Ind., 428 N.E.2d 241.

It is uncontroverted that these two suspects were in Emily's view at close quarters for a full five minutes. She had a good opportunity to observe them because the lighting was good and she was wearing her contact lenses. Under the totality of these circumstances we do not find Emily's in-court identification of Hall to be unconstitutionally tainted or otherwise legally defective. *Williams, White, Johnson, Kusley,* and *Remsen, supra.*

## II.

### HALL'S MOTION FOR SEVERANCE

■ Hall further argues his pre-trial motion for severance should have been granted to avoid the "likelihood of unwarranted conviction" because Emily's identification of Bray was more positive than her identification of Hall,[2] but acknowledges the trial court's refusal to grant the motion is reviewable only for abuse of discretion. That question is to be determined not by what is alleged in the motion, but by what actually transpired at trial. *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. Hall has not shown he was subjected to such prejudice that it was an abuse of discretion for the trial court to have refused to grant the severance, as he is required to do. *Chandler v. State*, (1981) Ind., 419 N.E.2d 142.

Further, Hall waived any severance error because he did not renew his motion at or before the closing of evidence at trial. IC 35–3.1–1–12, *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289.

We find no error. This appeal is dismissed as to Bray, and the trial court's judgment affirmed as to Hall.

MILLER, P. J., and YOUNG, J., concur.

---

**2.** Ind.Code 35–3.1–1–11(b) reads in pertinent part as follows:

"Upon motion of the defendant or the prosecutor, the Court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."