**O'Neal WOODS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–83–555.

Court of Criminal Appeals of Oklahoma.

Jan. 28, 1986.
As Corrected Feb. 4, 1986.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, O'Neal Woods, was found guilty of Robbery in the First Degree in Oklahoma County Case No. CRF–82–5971 and was sentenced to serve five years in prison; he appeals. The judgment and sentence is reversed and remanded with instructions to dismiss.

On November 15, around 4:45 p.m., 18 year old Talbet Sumners was servicing and collecting money from vending machines owned by his father at an arcade and the Salvation Army on N.E. 23rd Street in Oklahoma City. He had just finished and was loading the money counter and coin bags in his van, when he was attacked by two men and robbed.

In appellant's first proposition he claims the court should have sustained his motion to suppress the victim's in-court identification. He alleges the police used suggestive methods when the victim picked out his picture in the photo lineup. In this case the integrity of the victim's identification is paramount since he was the state's only witness and there was no other evidence introduced at trial. Appellant offered three witnesses who testified that appellant was not at the arcade when the robbery occurred.

The photo lineup was not included in the record and is silent on how the police selected the five or six "mugshots". There was no objection, however, to the content of the lineup but rather how it was conducted. The victim testified that when the policeman gave him the photos "he told me to pick out the one that I thought did it, the one I thought was him". After he picked appellant's picture the officer said that was who they thought did it. This was the only photo lineup he viewed and it was within a few days of the crime. He testified he went through the pictures two or three times to make sure he had the right man.

He said "I picked out the one I thought was the guy that was hitting on me."

The first and only time he saw his attacker was when the two men were running towards him, a distance of about ten feet, for about four or five seconds. He did not see him again because during the attack he was held face down in some boxes in the back of the van while he was being hit. At trial he described his attacker as a black male five feet six or seven inches tall, with a mustache, frizzy hair, and medium build. He said he had nothing peculiar about his face and he was wearing jeans and a brown leather jacket. It is apparent this description would fit a large number of people. Previously, at the preliminary hearing, when asked how he described his attacker to the police at the crime scene, he said the man was six feet tall, heavyset and had a mustache.

This discrepancy was brought out at the trial on cross-examination. The victim's description of the other man, who was never apprehended, never varied. There were other discrepancies in the victim's testimony. At the preliminary hearing he testified he had $998 in four bags but at trial he said there were two bags of coins and they totaled approximately $1,250.

The test to determine the integrity of an eyewitnesses' in-court identification was enumerated in *Porter v. State*, 674 P.2d 558 (Okl.Cr.1984). Consideration must be given to the circumstances under which the witness observed the defendant during the commission of the crime; the degree of the witnesses' attention given to the perpetrator during the crime; the certainty and accuracy of the previous identification made by the witness and the time lapse between the crime and the first confrontation. *See also Porter v. State*, 666 P.2d 784 (Okl.Cr.1983); *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In the present case the pretrial confrontation was very suggestive. It became a viable issue when on cross-examination the victim admitted that before he was given the photos he thought one of the pictures would be his attacker. He thought he was given the "hint" by the

officer who conducted the lineup. The officer who handled the lineup was not called as a witness.

In applying the *Porter* test to this case we find the Court should have granted appellant's demurrer to the evidence at the close of the State's case. The victim's only opportunity to observe his assailant was at the crime scene. He had only a few seconds to observe both attackers when he looked over his shoulder and saw them ten feet away running towards him. Even in that brief space of time the victim admitted his attention was split between the man who hit him and the other assailant who he had noticed at the door of the arcade.

The victim testified on direct examination at the preliminary hearing, the hearing on the motion to suppress and at the trial that he was certain appellant was his attacker. He equivocated, however, when cross-examined at the hearings and the trial. As pointed out above, the victim's testimony on other salient issues had substantial variations in the details. When the victim answered "I picked out the one I thought was the guy that was hitting on me.", the certainty he displayed on direct examination was entirely negated. The jury could not have found, on this evidence alone, beyond a reasonable doubt, the appellant was the person who committed this robbery.

This matter is therefore REVERSED and REMANDED with instructions to DISMISS.

PARKS, P.J., specially concurring.

BUSSEY, J., not participating.

PARKS, Presiding Judge, specially concurring:

I agree with the disposition of this case, as announced in Judge Brett's opinion. I write separately only to add that a majority of courts have found it unnecessarily suggestive for police to announce to the witness that his or her identification is of the person whom police suspect of having committed the crime in question. *See e.g. United States v. Field*, 625 F.2d 862 (9th Cir.1980); *Commonwealth v. Toto*, 15 Mass.App. 941, 445 N.E.2d 171 (1983); *State v. Baldwin*, 59 N.C.App. 430, 297 S.E.2d 188 (1982). Furthermore, at least one court has held that it is error for the police to suggest, prior to the display of photographs to the witness, that a suspect's picture is included in the display. *See People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973). When the witness is informed that a suspect's photograph is within the group and, after a selection is made, the police announce that the witness made the correct selection, the identification procedures are certainly rendered impermissively suggestive. *See Hall v. State*, 436 N.E.2d 357 (Ind.Ct.App.1982). The identification procedure herein was certainly suggestive, and the identification at trial was not shown to be independently reliable. *See Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

I hasten to add that police should refrain from making any unnecessary comments during the identification procedure. Police should only (1) present the photographs to the witness, and (2) ask the witness to look over the photographs carefully and, after viewing the photographs, inform the officer whether the photograph of the criminal is contained within the group. Any other comments may render the identification process unnecessarily suggestive, and result in suppression of the identification at trial, as occured in this case.