## LARRY W. STACKS *v.* STATE OF INDIANA

[No. 3-1175A263. Filed February 22, 1978. Rehearing denied March 31, 1978. Transfer denied July 28, 1978.]

*William F. Carroll, Carroll, Barber & Sorbello*, of Crown Point, for appellant.

*Theodore L. Sendak*, Attorney General, *James N. Shumacker*, Deputy Attorney General, for appellee.

HOFFMAN, J. — The appellant Larry W. Stacks (Stacks) entered a plea of not guilty by reason of insanity to the charge of robbery.[1] He was convicted of robbery after a trial by jury and judgment was entered thereon by the trial court. Following the denial of his motion to correct errors, appellant perfected this appeal raising the following issues for review:

I. Did the trial court err in denying the motion to suppress the line-up identification?

II. Did the trial court err in refusing to recognize the plea negotiations between the State of Indiana and Stacks?

III. Did the trial court err in summarily denying the motion for change of venue from the Judge?

IV. Did the trial court err in admitting the testimony of Don Willis Stran with regard to Stacks' other criminal involvement?

V. Did the trial court err in failing to declare a mistrial after Dr. Peter Gutierrez referred to his psychiatric examinations of Stacks in other cases?

VI. Did the trial court err in refusing to admit into evidence Stacks' army medical records, hospital records from his treatment of hepatitis in February, 1974, and the testimony of an expert witness concerning narcotic addiction?

On October 11, 1974, Donald Eugene Vitoux was employed at the Clark Service Station located at Main and Porter Streets in Crown Point, Indiana. While working alone between 1:00 and 1:30 A.M., Vitoux was robbed by a man driving a 1973 or 1974 silver-blue

---

1. IC 1971, 35-13-4-6 (Burns Code Ed.).

Thunderbird. The lighting at the station was "like daylight." The robbery lasted approximately five to seven minutes. For a minute and a half, Vitoux observed the man exit his automobile, approach the station, produce a handgun and ask for the money. During the remainder of the robbery Vitoux faced a wall in the backroom of the building. Vitoux described the robber as a man about six feet tall, weighing 150 pounds, with red hair and a red beard and wearing a blue jean jacket and blue jeans.

Patrolman Gerald Baldwin of the Crown Point Police Department, while on patrol at 1:15 A.M. on October 11, 1974, observed a silver-blue Thunderbird and a man with the attendant at the Clark Service Station. Baldwin testified that the lighting at the station was "like daylight." Baldwin observed the man from a distance of fifty feet, and described him as "five foot nine", slender, with reddish-brown hair and a full beard, and wearing a faded blue jean jacket and blue jeans.

About an hour after the robbery, Patrolman Baldwin transported Vitoux to a line-up at the Indiana State Police Post in Schererville. During the trip Vitoux was told that police had a suspect and that, if he could, he should select the person who robbed him. Baldwin did not, however, instruct Vitoux which man to select.

At the line-up both Vitoux and Baldwin immediately identified Stacks as the robber. At trial, Vitoux and Baldwin again identified Stacks as the robber, and as the man whom they identified at the State Police Post.

At trial Don Willis Stran who worked at a Clark Service Station in St. John, Indiana, testified, over objection, about an armed robbery allegedly committed by Stacks at 1:45 A.M. on October 7, 1974. Stran identified Stacks as the man who robbed him.

Stacks, relying upon the defense of insanity caused by the physical compulsion of heroin withdrawal, offered into evidence his army medical records, hospital records from his treatment for hepatitis in February, 1974, and expert testimony about narcotics addiction and withdrawal. The trial court ruled all such evidence inadmissible. Dr. Peter Gutierrez testified that he was appointed

to examine the sanity of Stacks in Cause Nos. 174-799; 174-735; and 474-669. Pursuant to defense counsel's objection, the court admonished the jury to disregard the reference to the two cause numbers which were then not before the trial court and denied counsel's motion for a mistrial. Dr. Gutierrez testified that in his opinion Stacks was sane because he was not suffering from heroin withdrawal at the time of the offense.

## I.

Did the trial court err in denying the motion to suppress the line-up identification?

In *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199, the Supreme Court held, when judged by the totality of the circumstances, the manner of conducting pretrial identification procedures may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to constitute a denial of due process of law. *Id.*, 388 U.S. at 302, 87 S.Ct. at 1972. Due process of law requires suppression of testimony concerning an out-of-court identification when the procedure employed was unnecessarily suggestive. *Stovall v. Denno, supra; Norris v. State* (1976), 265 Ind. 508, 356 N.E.2d 204.

An examination of the totality of the circumstances reveals the following facts regarding the line-up identification procedure: During the trip to the line-up at the State Police Post, Donald Vitoux, the victim of the robbery in this case, was told by police officers that they had a suspect, that he was going to view a line-up, and that he should select the person who robbed him, if he could. The line-up, which occurred one hour after the robbery, contained four participants. Stacks was the only man with red hair and a red beard. The other three men had black hair. One man, who was considerably shorter than Stacks, also had a beard. Stacks and the bearded man stood beside each other, and both wore blue jeans and blue jackets. The other two men were "clean-cut." One of them was 5'9", weighed 220 pounds and wore a plaid shirt. Vitoux testified that none of the other men in the line-up resembled Stacks in height, weight, complexion or color of hair. Vitoux had described the robber as a man six feet tall with red hair and red beard, weighing

150 pounds, and wearing a blue jean jacket and blue jeans. All four participants were asked to state their names and a certain phrase. Both Vitoux and Patrolman Baldwin, another eyewitness, selected Stacks from the line-up immediately.

Several recent Indiana cases discuss unnecessarily suggestive line-ups. Line-ups of four participants are not generally considered adequate. *Tewell v. State* (1976), 264 Ind. 88, 339 N.E.2d 792, 799. A line-up procedure is impermissibly suggestive where the police specifically tell a witness that a suspect is in the line-up. *Sawyer v. State* (1973), 260 Ind. 597, 298 N.E.2d 440; *Hopkins v. State* (1975), 163 Ind. App. 276, 323 N.E.2d 232, 236. Such advice from the police needlessly decreases the fairness of the identification process.

> "A witness may thus be lead to feel that he has an obligation to choose one of the participants in the display since the police evidently are satisfied that they have apprehended the criminal. The result may be that the witness strains to pick someone with familiar characteristics or someone who most resembles the actual criminal or the result may be that the witness will choose the one least dissimilar by the process of elimination." *Sawyer v. State, supra,* 260 Ind. at 602, 298 N.E.2d at 443.

Moreover, a line-up in which the accused stood beside a noticeably taller man may be overly suggestive. *Griffin v. State* (1976), 171 Ind. App. 544, 357 N.E.2d 917, 922. Finally, a *marked* difference in the color of an accused's hair or complexion as compared to other participants, which difference gives rise to a substantial likelihood of irreparable misidentification, renders a pretrial identification procedure impermissibly suggestive. *See, Caywood v. State* (1974), 160 Ind. App. 346, 311 N.E.2d 845, 848; *Johnson v. State* (1972), 257 Ind. 634, 277 N.E.2d 791.[2]

However, the Supreme Court of Indiana has held that a pretrial confrontation occurring shortly after the commission of an offense

---

2.  The fact that a suspect is the only individual in a line-up with a distinctive hair-style may have some suggestive impact on witnesses present for purposes of identification. Such distinctiveness of hair-style has been held to be not necessarily unconstitutionally suggestive where that factor is offset by other non-suggestive factors, such as similarity of dress, complexion, hair color, age, approximate height and weight, and the presence of counsel. *Thurman v. State* (1970), 255 Ind. 102, 262 N.E.2d 635; *Fields v. State* (1975), 263 Ind. 550, 333 N.E.2d 742.

and upon the apprehension of an accused is not *per se* unduly suggestive even though the accused is the only one exhibited. *Wright v. State* (1972), 259 Ind. 197, 285 N.E.2d 650.

The freshness of the event offsets the probability for misidentification presented by the fact of one person in apparent custody. Thus whether the confrontation is overly suggestive must be determined from the total circumstances. *Hampton v. State* (1977), 172 Ind. App. 55, 359 N.E.2d 276 (transfer denied). Here the line-up occurred one hour after the robbery. Vitoux had ample opportunity for recognition. He accurately described Stacks' appearance and attire. He exhibited no uncertainty in his identification. There was sufficient basis for his testimony. Moreover, an in-court identification may be reliable even though the pretrial identification was unnecessarily suggestive. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401. The witness' in-court identification is admissible, regardless of the improper pretrial identification, if the State presented clear and convincing evidence of a substantial independent basis for the in-court identification. *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193, 197; *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691, 694. Evidence of such an independent basis for the identification includes:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers, supra,* 409 U.S. at 199, 93 S.Ct. at 382.

In *Dillard v. State* (1971), 257 Ind. 282, at 286-87, 274 N.E.2d 387, at 389, our Supreme Court noted additional factors bearing directly on the opportunity of the witness to observe the perpetrator of the crime:

> "These would include the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe the particular characteristics of the criminal * * * ."

In the present case, the trial court could have found that the in-court identification of Vitoux and Baldwin were based upon observations independent of the line-up. Vitoux testified that the robbery lasted five to seven minutes. Vitoux observed the robber closely for a minute and a half until he was ordered to face the wall. The lighting conditions at the station were "like daylight." The descriptions of the robber provided by Vitoux and Baldwin closely matched the appearance of Stacks on the morning of the robbery. Because the record reveals clear and convincing evidence of an independent basis for the in-court identifications, the in-court identifications were admissible.[3]

Stacks also contends that his exposure to witnesses at the suppression hearing contaminated the in-court identification. The record reveals that Stacks did not raise this argument before the trial at the suppression hearing, or at trial when he objected to testimony regarding the line-up identification. Since Stacks has attempted to raise this argument for the first time on appeal, without having afforded the trial court any opportunity to consider the issue, he has failed to preserve the argument for review by this court. *Norris v. State, supra* (1976), 265 Ind. 508, 356 N.E.2d at 207. Stacks should have made this argument in a motion to suppress the identification at trial. *James v. State* (1973), 156 Ind. App. 506, 297 N.E.2d 485.

## II.

Did the trial court err in refusing to recognize the plea negotiations between the State of Indiana and Stacks?

In his motion for change of venue from the judge, Stacks stated that his lawyer and the deputy prosecutor presented to the trial judge a negotiated plea agreement whereby Stacks would plead guilty to theft of property over $100 in value in two pending robbery cases, the State would dismiss a third robbery charge, and

---

3. Although Stacks adequately preserved the question of the denial of his motion to suppress, he failed to object to the in-court identifications. He technically has failed to preserve the question of the validity of the in-court identifications. *Loy v. State* (1975), 165 Ind. App. 31, 330 N.E.2d 773. The issue is discussed here because in-court testimony about the line-up is inextricably intertwined with the identification testimony.

Stacks would serve two concurrent sentences of one to ten years. According to the motion, the trial judge rejected the plea bargain.

The Supreme Court of the United States and the appellate courts of Indiana have affirmatively recognized that the plea bargaining process is an essential component of the administration of criminal justice. *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; *Dube v. State* (1971), 257 Ind. 398, 275 N.E.2d 7; *Moulder v. State* (1972), 154 Ind. App. 248, 289 N.E.2d 522. While Chief Justice Burger expressed the need and desirability of plea bargaining in *Santobello*, he also observed that there is no absolute right to have a guilty plea accepted and that a court may reject a plea in the exercise of its sound judicial discretion. *Id.,* 404 U.S. at 262, 92 S.Ct. at 498. This court has held that the trial court is not required to accept a plea bargain arrangement entered into between the State and the defendant. *Griffith v. State* (1975), 163 Ind. App. 11, 321 N.E.2d 576, 579. The reasoning supporting this holding was aptly stated in Note, Guilty Plea Bargaining: Compromises by Prosecutor to Secure Guilty Pleas, 112 U. Pa. L. Rev. 865, 893 (1964):

> "Plea arrangements should ordinarily be affirmed by the courts and the guilty plea accepted. But the judiciary, whenever a plea bargain has been made, bears an obligation to evaluate the circumstances of the case and determine the propriety of the particular bargain to prevent flagrant abuses of discretion by prosecutors."

Since the trial judge was not required to accept the tendered plea bargain, the decision to accept or reject the plea agreement was within the sound discretion of the trial judge. Stacks has failed to demonstrate an abuse of that discretion.

### III.

Did the trial court err in summarily denying the motion for change of venue from the judge?

In his verified motion for change of venue from the judge, Stacks contended that the trial judge participated in plea bargaining by rejecting a plea agreement made between Stacks and the State.

He alleged that the judge's rejection of the plea bargain prejudiced the judge against him such that he could not receive a fair and impartial trial. The motion was filed the day trial began and before the prospective jurors were sworn and selection of the jury. The State offered nothing to refute the allegations in Stacks' verified motion. The trial judge overruled the motion for change of venue from the judge without hearing or argument thereon.

Indiana Rules of Procedure, Criminal Rule 12, which governs changes of judges in criminal cases, was adopted by the Supreme Court of Indiana with the view that all parties involved in litigation might have the maximum opportunity in avoiding trial in a biased or prejudiced atmosphere. *State ex rel. Knox v. Shelby Sup. Ct.* (1972), 259 Ind. 554, 290 N.E.2d 57.

The pertinent parts of Criminal Rule 12, *supra*, provide:

"In all cases where the venue of a criminal action may now be changed from the judge, such change shall be granted upon the execution and filing of an unverified application therefor by the state of Indiana or by the defendant. * * *

"In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

"An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial. * * *

"Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion. * * * ."

Stacks' motion for change of venue from the judge was filed on June 9, 1975, more than ten days after his plea of not guilty. His motion alleged prejudice resulting from the trial judge's rejection of a plea bargain on June 4, 1975, and sufficient facts and reasons to comply with the technical requirements of the foregoing proviso. *Cf: Tyner v. State* (1975), 166 Ind. App. 45, 333 N.E.2d 857; *Rex v. State* (1976), 171 Ind. App. 104, 355 N.E.2d 282 (transfer denied).

Since Stacks' motion for change of judge was filed after the expiration of the time limits set forth in Criminal Rule 12, *supra*, this case is controlled by the proviso of Criminal Rule 12, *supra*, which requires the application for change of judge to be verified by the party and which provides that "the ruling of the court may be reviewed only for abuse of discretion." The trial court in this case, therefore, committed reversible error only if the denial of Stacks' motion was an abuse of discretion. *Cade v. State* (1976), 264 Ind. 547, 348 N.E.2d 394.

Stacks relies upon cases holding that a trial court's denial of an uncontroverted, verified motion for change of venue from the judge, without affording the defendant a hearing or an opportunity to present evidence in support of his motion, is an abuse of discretion and reversible error. *Millican v. State* (1973), 157 Ind. App. 363, 300 N.E.2d 359; *Bradberry v. State* (1974), 160 Ind. App. 202, 311 N.E.2d 437.

In *Millican v. State, supra,* the defendant filed his verified motion for change of venue from the judge after learning that medical reports determining him competent to stand trial were filed without his knowledge or within his presence. In holding the trial court committed reversible error in denying the motion without a hearing, the court relied principally on *Hanrahan v. State* (1968), 251 Ind. 325, at 334, 241 N.E.2d 143, at 148, wherein it is stated:

"We hold that to deny an uncontroverted, verified application for change of venue without affording petitioner some opportunity to present additional evidence in support of said application is an abuse of discretion by the trial court, and that such a denial in this case constitutes reversible error. * * * [W]here the credibility of an uncontroverted verified application is to be the *sole basis for the denial,* the petitioner should be allowed a

hearing or other opportunity to bolster his credibility with supporting evidence." (Emphasis added.)

In the case at bar a hearing would have disclosed little to bolster the credibility of Stacks' motion. Since the judge rejected the plea bargain, he was already aware of the facts alleged in Stacks' motion. An evidentiary hearing would have produced no additional evidence and, therefore, was unnecessary. *Brown v. State* (1977), 266 Ind. 82, 360 N.E.2d 830. Moreover, *Millican* and *Hanrahan* require a hearing where the credibility of the verified application is to be the sole basis for denial. In the case at bar, the credibility of Stacks' motion was not the only question. The primary questions are whether the trial judge participated in plea bargaining with Stacks, and if he did, whether his rejection of the plea bargain constituted prejudice sufficient to require a change of judge.

Judicial participation in plea bargaining has been heavily criticized by courts and commentators. Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv. L. Rev. 564, 583-585 (Jan. 1977); *United States v. Werker* (2d Cir. 1976), 535 F.2d 198; (Fed. R. Crim. P. 11 (e)(1) prohibits judicial participation in sentence bargaining); *Commonwealth v. Evans* (1969), 434 Pa. 52, 252 A.2d 689 (participation by the trial judge in plea bargaining prior to the tender of a guilty plea is inconsistent with due process).

One commentator recently observed:

"[O]ne common objection is that the judge's participation in plea bargaining will impair his impartiality at trial and during sentencing in those cases in which the parties were unable to agree and the defendant subsequently goes to trial. This objection is sound, however, only if the same judge who participates in plea bargaining presides over a subsequent trial and sentencing. The objection can be met simply by bringing in a new judge if the case goes to trial." Note, 90 Harv. L. Rev. 564, 584 (Jan. 1977). (Footnotes omitted.)

The record in the instant case does not, however, show that the trial judge participated in plea bargaining *prior* to the tender of the plea agreement on June 4, 1975. From the record, it appears that the trial judge only rejected the tendered plea agreement.

Stacks does not allege, nor does the record show, any specific acts of prejudice by the judge during the trial. This court cannot assume bias or prejudice on the part of the trial judge, but must rely upon the record to show prejudice. *Kleinrichert v. State* (1973), 260 Ind. 537, 297 N.E.2d 822. Stacks has failed to show that the trial court's denial of his motion for change of venue from the judge was an abuse of discretion.

### IV.

Did the trial court err in admitting the testimony of Don Willis Stran with regard to Stacks' other criminal involvement?

The general rule in Indiana is that, in a prosecution for a particular crime, evidence of other crimes committed by the defendant cannot be used to prove the offense for which he is on trial; such evidence is highly prejudicial and therefore inadmissible. *Layton v. State* (1966), 248 Ind. 52, 221 N.E.2d 881; *Loveless v. State* (1960), 240 Ind. 534, 166 N.E.2d 864; *Brooks v. State* (1973), 156 Ind. App. 414, 296 N.E.2d 894. One of the numerous exceptions to this general rule holds that if insanity is an issue in a criminal prosecution, all relevant evidence of the defendant's past behavior, including his past criminal behavior, is admissible for the purpose of determining his sanity. *Whitten v. State* (1975), 263 Ind. 407, 333 N.E.2d 86; *Stamper v. State* (1973), 260 Ind. 211, 294 N.E.2d 609; *Fulmer v. State* (1967), 249 Ind. 261, 230 N.E.2d 307. Since Stacks entered a plea of not guilty by reason of insanity, Stran's testimony about the earlier Clark Station robbery committed by Stacks was admissible.

### V.

Did the trial court err in failing to declare a mistrial after Dr. Peter Gutierrez referred to his psychiatric examination of Stacks in other cases?

During direct examination, Dr. Peter Gutierrez testified that he had been ordered by the court to examine Stacks in Cause Nos. 174-799; 174-735; and 474-669. Pursuant to an objection by defense counsel, the court admonished the jury to disregard the Doctor's inadvertent reference to the two cause numbers which were then not before the trial court. Stacks' motion for a mistrial was denied.

The granting of a motion for a mistrial rests largely in the discretion of the trial court, and reversal will result only from a clear error in its ruling. *Carmon v. State* (1976), 265 Ind. 1, 349 N.E.2d 167; *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312; *Duke v. State* (1968), 249 Ind. 466, 233 N.E.2d 159. Significant deference is given to the ruling of the trial court, because the trial court is in a more advantageous position than an appellate court to accurately gauge the surrounding circumstances of the testimony and its probable impact on the jury. *Lynch v. State* (1974), 262 Ind. 360, 316 N.E.2d 372. Under ordinary circumstances, a jury admonition to disregard the statement is deemed sufficient to overcome any prejudice. *Duke v. State, supra; McCulley v. State* (1971), 257 Ind. 135, 272 N.E.2d 613. Stacks has failed to show that the court's admonition was insufficient to cure any harm caused by Dr. Gutierrez's statement. *Martin v. State* (1974), 261 Ind. 492, 306 N.E.2d 93; *Young v. State* (1970), 254 Ind. 379, 260 N.E.2d 572. He has failed to show that the statement was a deliberate attempt by the witness to prejudice the jury. *Cf. White v. State, supra.* Thus, he has failed to show that the trial court abused its discretion in denying the motion for mistrial.

## VI.

Did the trial court err in refusing to admit into evidence Stacks' medical records and the testimony of an expert witness concerning narcotic addiction?

Stacks sought to introduce into evidence his Army medical records prior to his discharge in late 1973 and records from his treatment for hepatitis at Our Lady of Mercy Hospital in February, 1974. He also wished to adduce the testimony of an expert on narcotics addiction. The trial court ruled the medical records too remote in time and held all this evidence irrelevant.

In *Faught v. State* (1973), 155 Ind. App. 520, 293 N.E.2d 506, the primary case relied upon by Stacks, the defendant entered a plea of insanity to the charge of armed robbery. As in the present case, the insanity defense in *Faught* was based upon the theory that the

defendant, a heroin addict, was insane[4] because of a compulsion caused by his complete lack of the addictive drug. In *Faught,* the trial court struck the testimony of defense expert medical witnesses whose opinions were that the defendant was insane at the time of the offense due to a mental defect caused by his compulsion to obtain heroin. In reversing the conviction, the court held that a criminal defendant must be afforded the opporunity to present relevant, competent and material evidence to support his plea of insanity. Specifically, it held that Faught was entitled to have the jury consider all qualified medical expert testimony as to his state of mind at the time of the robbery.

Several other Indiana cases bear on the question of the admissibility of evidence in a criminal prosecution where the defense is insanity. In *Twomey v. State* (1971), 256 Ind. 128, 267 N.E.2d 176, our Supreme Court held that once a plea of insanity is offered by a defendant, all relevant evidence is deemed admissible. Quoting from *Wilson v. State* (1966), 247 Ind. 454, at 461, 217 N.E.2d 147, at 151, the court discussed the scope of the phrase "all relevant evidence":

" 'It has been repeatedly held that a plea of insanity opens wide the door to all evidence relating to the defendant and his environment. *In many instances evidence would not otherwise be competent or material except for showing the mental condition or mental state of the defendant.*' " (Emphasis added.)

*Twomey v. State, supra,* 256 Ind. at 132-33, 267 N.E.2d at 179. *See, Henderson v. State* (1974), 159 Ind. App. 621, 308 N.E.2d 710.

In *Smith v. State* (1972), 259 Ind. 187, 285 N.E.2d 275, *cert. denied,* 409 U.S. 1129 (1973), the opinions of two court-appointed psychiatrists were based in part on information gained from

---

4. In *Hill v. State* (1969), 252 Ind. 601, at 614, 251 N.E.2d 429, at 436-37, our Supreme Court adopted the following definition of insanity for Indiana as followed in *U.S. v. Shapiro* (7th Cir. 1967), 383 F.2d 680,

" 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of law. (2) As used in this Article, the terms "mental disease or defect" do *not* include an abnormality manifested only by repeated criminal or otherwise, anti-social conduct.' (our emphasis). American Law Institute, Model Penal Code (final draft) (1962)."

mental hospital records. The writers of the reports were not present in court to be examined, and Smith objected that the reports were hearsay which tainted the expert testimony. The Supreme Court held that the opinion testimony of the psychiatrists was not excludable because the experts based their opinions in part on reports from a State mental hospital. The court also observed,

"Although medical reports containing observations and expert opinions relating to a defendant's sanity or insanity should not be admitted directly into evidence, they may be used to aid another expert in formulating his opinion as to the defendant's sanity. The function of an expert witness in a case concerning sanity or insanity is advisory in nature. He does not state a *fact* but gives an *opinion* in order to aid the jury or trier of fact. The trier of fact must make the ultimate decision on this issue. *See Hill v. State* (1969), 252 Ind. 601, 251 N.E.2d 429. The reports are not accepted by the expert testifying as true facts but are examined by him to provide an aid in diagnosis." *Id.*, 259 Ind. 189, 285 N.E.2d at 275-76.

Applying the latter reasoning to the instant case, the trial court could have found that the medical records offered by Stacks should not be directly admitted into evidence. The record shows that Stacks' expert witnesses, Dr. Manuel Vargas and Dr. Joseph Ansfield, did consult Stacks' Army medical records and the hospital records concerning his treatment for hepatitis in conducting their examinations of appellant. The trial court in this case did permit the expert witnesses for the defense to develop fully their opinion testimony that Stacks was insane at the time of the offense. As noted, above, the defense experts relied upon the excluded medical reports in forming their opinions.

A trial judge has wide latitude in ruling on the relevancy of evidence. *Barnes v. State* (1975), 263 Ind. 320, 330 N.E.2d 743, 746. Evidence, while logically relevant, but which has little probative value in the particular case, has no legal relevancy or materiality, and such evidence may be properly excluded. *State v. Lee* (1949), 227 Ind. 25, 29, 83 N.E.2d 778, 780. The exclusion of evidence on the ground that it is remote and irrelevant is within the discretion of the trial court. *White v. State* (1972), 154 Ind. App. 585, 290 N.E.2d 493.

Conspicuously absent from the record is an offer of proof regarding the substance of the testimony to be presented by the expert on narcotics addiction or the contents of the Army medical records regarding Stacks' narcotics addiction. An offer to prove is necessary to enable both this court and the trial court to determine adequately the admissibility and relevance of the proffered testimony. *Marposon et ux. v. State* (1972), 259 Ind. 426, 287 N.E.2d 857. Stacks has failed to provide a record showing how the proffered evidence related to the issue of his sanity at the time of the offense. *See, Scruggs v. State* (1974), 161 Ind. App. 666, 317 N.E.2d 807. No clear abuse of discretion by the trial court has been shown.

For the foregoing reasons, Stacks has failed to demonstrate that the trial court committed reversible error. The judgment of the trial court is affirmed.

Affirmed.

Staton, P.J., and Lowdermilk, J., participating by designation, concur.

NOTE—Reported at 372 N.E.2d 1201.