**William N. CARR, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–1177A287.

Court of Appeals of Indiana, Third District.

April 26, 1979.

John F. Hoehner, Valparaiso, for appellant.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

William N. Carr was convicted by jury of the crime of Theft. On appeal, he raises several errors. Because we reverse for a new trial, we will discuss only the prejudicial effect created by the admission of evidence that his residence was under police surveillance prior to the crime and his arrest.

The facts giving rise to this appeal are as follows: During the evening and early morning hours prior to the commission of the crime charged, the home of Carr's mother, Mrs. Kennedy (where Carr spent much of his time; testimony refers to this as his residence), was under police surveillance by three policemen in different unmarked cars. Carr's name was among those on a list of possible suspects involved in a recent rash of CB radio thefts in the area; none of the thefts had occurred in the immediate vicinity of Carr's residence.

At approximately 2:45 a. m. on October 9, 1976, Detective Weeks, seated in an unmarked car, saw Carr jogging across the intersection. Carr was carrying what appeared to be a radio or an eight-track tape player. Weeks turned on his car's lights and lost sight of Carr, who continued running. One of the three officers was assigned to stand in front of the home's garage to prevent anyone from entering. The other two began searching for Carr. A half-hour later, Weeks heard a fence rattle, and saw Carr run alongside a house. Weeks advised Carr to stop, which he did. Weeks asked about the radio and Carr said he didn't have one. Weeks immediately advised Carr of his *Miranda* rights and effected his arrest. The officers then searched the area for the radio. One of them found a radio in a yard near a doghouse. A search of Mrs. Kennedy's home yielded no evidence.

Carr was transported to jail. Two hours later, the police discovered that the radio they retrieved had been stolen, in fact, from an individual who lived about four blocks from the scene of the arrest.

Prior to trial, Carr made a motion in limine seeking to have the court order the State

"to refrain from eliciting from any witness the fact that the Defendant's alleged residence of October 9, 1976 was under surveillance at any time. The prejudicial effect of such testimony is apparent and would lead the jury to believe that police authorities thought the Defendant guilty of a crime even prior to the establishment of a crime itself."

Carr argued the motion before the court, claiming that the surveillance testimony was inadmissible for several reasons:

(1) the testimony was based on Carr's reputation or character, which would not be in issue;

(2) the probative value, if any, was far outweighed by its prejudicial effect;

(3) the testimony, which indicated the police officers' opinion of Carr's criminality contradicted the initial presumption of innocence to which Carr was entitled; and

(4) the testimony tended to prove other criminal behavior or activity by Carr.

The State indicated that presentation of the surveillance testimony was

"necessary in proving up our case against William Carr. That to disallow it would leave the jury in limbo, have questions in their mind. It would be, I think, a fatal error on the presentation of our case if we were not allowed to show that the police officers had this particular house under surveillance prior to this arrest."

Carr's motion in limine was denied. At trial, Carr was granted a continuing objection to the presentation of any surveillance testimony.

The State proceeded to bring in numerous references to the fact that Carr's residence (the home of his mother, Mrs. Kennedy) was under police surveillance prior to the crime.

Three different police officers testified to their activities in connection with the surveillance. Testimony prejudicial to Carr included the following exchange between the State and Detective Weeks:

"Q. Why did you conduct a surveillance of this house, Officer?

"A. Due to recent citizens. band radio thefts during the month of September and October, 1976.

"Q. How many thefts have there been?

"A. Between September 12th and October 8th, there were thirty-two (32).

"Q. In what area?

"A. In an old addition to South Haven.

"Q. And as a result of that information you decided to make surveillance of this subject's house, did you not?

"A. Yes, sir."

The details involved in setting up the surveillance were presented at length. Each officer described his position, his view of "721 McCool Road" (Carr's residence), his use of binoculars, etc., and his observations during the evening. Officer Ralph Levi testified that after Carr was spotted, he was assigned to secure the Carr residence and make sure nobody was able to enter it.

The surveillance testimony was inadmissible in Carr's trial for the theft of the CB radio. We hold that the trial court erred in denying Carr's motion in limine and in admitting the evidence over his objection at trial.

Such evidence may have been relevant at a probable cause hearing. *Davila v. State* (1977), Ind.App., 360 N.E.2d 283. However, the testimony relating to the surveillance was clearly irrelevant to a determination of the issue of Carr's guilt or innocence. Therefore, it had no probative value and should not have been before the jury. The State argues that the evidence was necessary to explain the presence of police at the scene. However, placing the officers at the scene had no relevance to the question of Carr's guilt or innocence of the crime with which he was later charged.

The surveillance testimony is inadmissible for other reasons as well. The jury was informed, through this testimony, that the police officers suspected Carr of involvement in a "rash" of other CB radio thefts. The fact of police surveillance arising from suspected but unrelated crimes belied the presumption of innocence Carr should have enjoyed with respect to the crime for which he was being tried. In addition, the testimony implied that Carr had participated in other CB thefts or, at the very least, that police suspected him of having the criminal character, or bad reputation, which would implicate him in the crime charged.

In Indiana,

"It is well settled law that evidence of criminal activities apart from the specific crime charged is inadmissible on the question of guilt if the evidence is irrelevant or produced merely to show the defendant's unsavory character or tendency to commit certain types of crimes. [Citations omitted]. The evidence will also be excluded if it misleads the jury or serves no purpose other than to prejudice the defendant in the eyes of the jury. . . ."

*Manuel v. State* (1977), Ind., 370 N.E.2d 904. *See also Stacks v. State* (1978), Ind.App., 372 N.E.2d 1201.

There is no question that the evidence showing that Carr was suspected of other criminal activity was not admissible under any exception to the above-stated rule. Carr's possible involvement in the other CB radio thefts bore no relationship to his possible involvement in the crime charged.

Finally, we feel that the admission of evidence did not constitute harmless error. The record shows that the State deliberately presented the surveillance testimony in order to bolster a weak case against Carr.[1] At the hearing on Carr's motion in limine, the State indicated that the surveillance testimony was necessary to prove its case against Carr, and that the granting of the motion in limine would fatally affect its presentation.

At trial the State proceeded to adduce evidence concerning every detail of the surveillance. The State elicited testimony showing that the surveillance was conducted because the police suspected Carr of involvement in other CB radio thefts. There is every reason to believe that the introduction of the surveillance testimony seriously prejudiced Carr's case in the minds of the jurors.

The placing of such inadmissible evidence, the deliberate purpose of which was to prejudice the jury against Carr's case, constituted an "evidentiary harpoon." *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. In light of the insubstantial case against Carr, the admission of the improper evidence could well have influenced the jury's verdict. *See also Brooks v. State* (1973), 156 Ind.App. 414, 296 N.E.2d 894. Carr is entitled to a fair trial at which such evidence is not admitted.

The cause is reversed and remanded for a new trial.

---

1. Other than that contained in the facts cited earlier, the only evidence at trial tending to show Carr had committed the crime charged was the admission of a knob of the type used to attach a CB radio to a car and an offhand statement by Carr. Both were secured from Carr after his arrest and detention. Their admission was challenged at trial. We will not decide the merits of Carr's arguments since we have reversed on another ground.

GARRARD, P. J., concurs in result with opinion.

HOFFMAN, J., dissents with opinion.

GARRARD, Presiding Judge, concurring.

I concur in the result reached because I agree that it was improper and prejudicial to allow the state, over objection, to present testimony that the police had Carr's residence under surveillance and that they considered Carr a suspect. I do not agree, however, that general testimony that police had an area under surveillance, thus accounting for their presence at the time and place of an offense or apprehension, is per se prejudicial and inadmissible.

One further point should be discussed. Carr sought a pre trial motion in limine to prevent the state's reference to the surveillance activities. When this motion was denied, he sought and was granted a continuing objection at trial to "any testimony whatsoever elicited from any of the prosecution's witnesses regarding surveillance activities."

Absent any elaboration this would merely amount to a general objection and would, therefore, be insufficient to preserve error for appellate review. *Beeler v. State* (1952), 230 Ind. 444, 104 N.E.2d 744. However, the objection was made and granted at the conclusion of appellant's argument to the court concerning his motion, and in the argument he specifically urged all the reasons he felt the evidence inadmissible. They included the improper and prejudicial effect to Carr of presenting evidence that police "suspected him" of possible guilt as the result of events having no connection with the crime charged. I believe that such specific argument, followed immediately by the seeking and granting of a continuing objection for trial, incorporated into the objection the reasons advanced in argument and was sufficient to preserve the error.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

Testimony by the police officer witness that he was on a surveillance to explain his presence is certainly admissible. The prosecutor's stated reason for eliciting such testimony was to explain why the police were present at certain locations. The appellant in his brief concedes such point—"Appellant cannot deny that the surveillance testimony was, to some extent at least, relevant."

However, I can agree that testimony beyond that point which would elicit facts that the police suspected appellant of crimes not connected with or charged should not be admitted. In the case-in-chief the officers were permitted to go beyond the permissible limits. This error has not been preserved. An objection was made to any testimony concerning surveillance which the court properly overruled for the reason hereinabove set out. If appellant wished to preserve error regarding additional questions which went beyond the testimony of a surveillance, an objection should have been made at trial to the specific questions. Thus, the court could properly limit the testimony at trial. In this case the appellant failed to object and thus waived any error as to its admissibility.

The record does not show that the State deliberately presented the surveillance testimony in order to bolster a weak case. There was more than sufficient evidence presented that demonstrated appellant's guilt beyond a reasonable doubt.

An "evidentiary harpoon" is not an element in this case. The prosecutor properly placed in evidence testimony that the trial judge ruled to be admissible. Such can never be an "evidentiary harpoon."

I would affirm the trial court.