Lawrence PARENT, et al., Trustees of
the Fabrique du Paroisse de Notre
Dame de Mont Carmel

v.

## ROMAN CATHOLIC BISHOP OF PORTLAND et al.

Supreme Judicial Court of Maine.

Argued March 16, 1981.

Decided Nov. 4, 1981.

William J. Smith, VanBuren (orally), Joel R. LeBlanc, Madawaska, for plaintiffs.

Robinson & Kriger, Robert C. Robinson (orally), Portland, Solman, Page & Hunter, P. A., Richard N. Solman, Caribou, for Roman Catholic Bishop of Portland.

---

Before McKUSICK, C. J., GODFREY, NICHOLS, GLASSMAN,* and CARTER, JJ., and DUFRESNE, A. R. J.

GODFREY, Justice.

Plaintiffs, Lawrence Parent and others, trustees of a religious association in the Roman Catholic parish of Lille, appeal from a summary judgment for the Roman Catholic bishop of Portland entered by the Superior Court. The bishop is a party to this action in his capacity as head and pastor of the Roman Catholic diocese of Portland, which includes the parish of Lille, and as a corporation sole created by special act of the Maine Legislature, Me.Priv. & Spec.L. 1887, ch. 151. Appellants allege the Superior Court erred in entering summary judgment because they were entitled to equitable relief in the form of a constructive trust to prevent the sale of church property of the Lille parish or to recover church property already sold. We deny the appeal and affirm the judgment below.

The village of Lille was settled in the last century by French Catholics. On March 31, 1876, Cyrille Thibodeau executed and delivered a warranty deed for land to the Right Reverend James Augustine Healy, bishop of the Diocese of Portland, and his successors. The consideration for this conveyance was paid by the parish. The deed conveyed an estate in fee simple absolute and contained no restrictions. In the years that followed, several Catholic churches were built on the land, thus providing the parishioners and their descendants with a place of worship.

On September 18, 1977, Bishop O'Leary, ninth bishop of Portland, announced that the church and rectory in Lille would be closed and the parish merged with a nearby parish. Thereafter the bishop sold some of the land and transferred other church assets in the parish. Appellants resisted. Appellants claimed that the parishioners had contributed money, time, property, and

---

* Glassman, J., sat at oral argument and in the initial conference but died prior to adoption of this opinion.

labor to the Lille parish over the years in reliance upon the promise of the church to provide religious services in Lille. That claim is at the heart of the appellants' challenge to the bishop's disposition of the church property in Lille.

On January 5, 1979, the appellants filed a complaint against the bishop and the grantees who held title to certain property in Lille conveyed by the bishop. The complaint alleged that a confidential relationship existed between the bishop and the Lille parishioners based on the bishop's position in the church, his promises to provide religious services, and their reliance upon those promises. It further alleged that the bishop had abused that relationship by closing the church, selling portions of the realty, and transferring other property, all without the approval of the parishioners. For relief, the complaint requested the Superior Court to impose a constructive trust on the bishop with respect to all property and assets given to the church by the parish, to enjoin the bishop from transferring any property given to the church by the parish, order grantees to reconvey the realty sold by the bishop, and award judgment for $70,000 in damages against the bishop.

On January 19, 1979, the bishop filed a motion to dismiss. In response to the bishop's argument that the court lacked subject-matter jurisdiction over the property dispute before it on First Amendment grounds, the court observed that "the usual prohibition [of the First Amendment] does not apply where the controversy can be resolved by the application of neutral principles of law developed for use in all property disputes." Because the motion to dismiss was based only on the legal sufficiency of the pleadings, the court denied the bishop's motion so that plaintiffs might have an opportunity to adduce evidence of an express trust, with respect to which the court could apply neutral principles of law in resolving the dispute.

After answering interrogatories propounded by the appellants, the bishop filed a motion for summary judgment on March 3, 1980. Accompanying this motion was an affidavit of the bishop and a photocopy of the 1876 deed. The bishop's answers to appellants' interrogatories showed that the proceeds derived from the sale of church property in the Lille parish had been deposited in general church bank accounts and not in trust for Lille parishioners. The bishop denied that he or any of his predecessors ever told the Lille parishioners that their contributions would be used exclusively for their parish. The answers fully described the transfer and location of other church property from the parish. Both the answers and the bishop's affidavit stated that canons of the Catholic church placed full authority for the disposition of church property in the bishop, and that no evidence of any trust agreement, express or implied, concerning any church property in the Lille parish could be found or was known to the bishop. On its face, the 1876 deed conveyed an estate in fee simple absolute without restriction. Finally, the bishop's answers also alluded to the fact that the special act of the Maine Legislature conferring the legal status of corporation sole on the bishop, expressly recognized the power of the bishop to dispose of property according to the discipline and government of the Roman Catholic Church.

In response to the bishop's affidavit and answers to interrogatories, the appellants filed the affidavit of Lawrence Parent. In substance, Parent's affidavit stated only that the Lille parishioners relied upon and respected the bishop; that they contributed to the parish because its priests and the bishop himself orally promised to maintain religious services there; and, finally, that before answering the interrogatories the bishop had never claimed an ultimate prerogative to dispose of church property. The affidavit made no reference to a written agreement of any type, and no such written agreement was ever produced for the court's consideration.

With the evidence summarized above before it, the Superior Court granted the bishop's motion for summary judgment. Noting that the plaintiffs had failed to adduce evidence of an express trust that the court

could recognize and enforce without becoming "entangled in matters involving church policy or practices," the court concluded that it lacked subject-matter jurisdiction to resolve the dispute between the parties and dismissed the complaint.

The appellants contend that the Superior Court erred in ruling that it lacked jurisdiction over the case because the First Amendment as applied through the Fourteenth does not bar the application of neutral principles of law to church property disputes and such principles include the law of constructive trusts. In response, the bishop appears to be arguing that judicial resolution of this particular case would abridge the guarantee of separation of church and state, since, absent a finding of an express trust, the Superior Court in applying the law of constructive trusts would be required to evaluate the allocation of power and religious doctrines of the Catholic church.

The United States Supreme Court has clearly held that neutral principles of law can be applied by state courts to resolve church property disputes. *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). In so doing, however, it has reaffirmed the fundamental constitutional principle that civil courts must avoid passing on questions of religious doctrine or becoming entangled in matters of religious controversy. *Jones v. Wolf, supra,* 443 U.S. at 602, 99 S.Ct. at 3024–25; *Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710, 96 S.Ct. 2372, 2381, 49 L.Ed.2d 151 (1976); *Presbyterian Church, supra,* 393 U.S. at 449, 89 S.Ct. at 606. In *Milivojevich, supra,* 426 U.S. at 710, 96 S.Ct. at 2381, the Court amplified the principle when it explained that this limitation on the authority of civil courts "applies with equal force to church disputes over church polity and church administration." Thus, we must determine from the pleadings, interrogatories, and affidavits before the Superior Court whether any relevant aspect of the law of trusts could have been applied to the material facts of this property dispute without "extensive inquiry by [the Superior Court] into religious law and polity." *Presbyterian Church, supra,* 393 U.S. at 449, 89 S.Ct. at 606. *See Smart v. Indiana Yearly Conference,* 257 Ind. 17, 271 N.E.2d 713 (1971).

The record before the Superior Court plainly revealed that the plaintiffs had no legal title to the property in question. Unopposed by plaintiff's proof, the bishop's answers to interrogatories, his affidavit, and the warranty deed by which the bishop acquired the realty clearly established that unrestricted title to the church property was in the bishop as ultimate church authority for the Portland Catholic diocese and as a corporation sole under Maine law. The record further indicates that plaintiffs failed to rebut evidence of the hierarchical structure of the Roman Catholic Church and the bishop's pre-eminent authority to administer church affairs throughout the diocese. Accordingly, absent evidence of some collateral legal obligation existing between the bishop and plaintiffs which could have been identified without entanglement in religious doctrine or polity, the Superior Court had no authority to review the bishop's actions with respect to the church property in Lille. *See Marich v. Kragulac,* 175 Ind.App. 538, 415 N.E.2d 91 (1981). If it is assumed, as plaintiffs alleged, that a confidential relationship existed between the bishop and plaintiffs, the First Amendment prohibited the Superior Court from deciding whether the bishop abused that relationship so as to justify the imposition of a constructive trust. Such a decision would have required the court to assess the scope of the bishop's authority under canon law and the propriety of his exercise of that authority in this case, matters over which the courts of this State have no jurisdiction. *Galich v. Catholic Bishop of Chicago,* 75 Ill.App.3d 538, 31 Ill.Dec. 370, 376–77, 394 N.E.2d 572, 578–79 (1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1277, 63 L.Ed.2d 600 (1980).

In the proceeding below, the Superior Court gave plaintiffs the opportunity to furnish the court with evidence of a collateral legal obligation when it denied the

bishop's first motion to dismiss. In response to the bishop's subsequent motion for summary judgment, no written instrument evidencing the existence of a simple contract or trust agreement of any kind was produced by the plaintiffs. Instead, plaintiffs filed the single affidavit of a Lille parishioner, who merely restated the allegations of the complaint that the parishioners had placed their trust in the bishop and contributed to the Lille church in reliance on the promises of the bishop to provide church services in Lille. In contrast to Parent's understanding, the bishop denied ever stating to the Lille parishioners that their contributions were to be used exclusively for the Lille parish and suggested that his actions and the actions of his predecessors in regard to the Lille property had been guided only by concern and responsibility for the "well-being of the spiritual life of the Catholics in Lille."

Without the aid of a writing plainly evidencing conditions or restrictions on the bishop's use of the Lille property and thus some basis for a legal or equitable right in the plaintiffs, it is obvious that the Superior Court could not have resolved the dispute before it without passing on the doctrines and practices of the Roman Catholic Church. Ascertaining the content of any such parol agreement or trust—express or implied—would have required the court to determine the understanding of the parties concerning the meaning of any oral assurances the bishop may have made. It would have required the court to draw inferences from the conduct of both parties over the years in giving and receiving contributions to the church. Such inquiries would have embroiled the court in extensive consideration of religious doctrine, polity and administration. The Superior Court did not err in granting the bishop's motion for summary judgment since plaintiffs had failed to show the basis for any legal obligation on the bishop that would have restricted disposition of the church property in Lille and warranted imposition of a constructive trust.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.