Howard GARRETT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49S00–9912–CR–694.

Supreme Court of Indiana.

Nov. 2, 2000.

Michael E. Caudill, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Parsanko, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

A jury convicted Howard Garrett of possession of cocaine and dealing in cocaine and also adjudged him a habitual offender. The trial court sentenced Garrett to fifty years for dealing in cocaine enhanced by thirty years for being a habitual offender. The court did not sentence Garrett for possession of cocaine. In this direct appeal, Garrett raises two issues for our review which we rephrase as follows: (1) was Garrett tried before an impartial judge; and (2) did defense counsel's stipulation to the dates of Garrett's prior convictions constitute a guilty plea to the habitual offender charge? We affirm.

## Facts

The record reveals that on December 2, 1998, Garrett sold .09 grams of cocaine to a confidential informant working for the Indianapolis Police Department. The informant wore a wire transmitter, and the transaction was recorded on audiotape. The State charged Garrett with possession of cocaine, dealing in cocaine, and being a habitual offender. The State offered Garrett a plea agreement that allowed him to plead guilty to a lesser dealing charge and receive a ten-year sentence enhanced by an additional ten years for the habitual offender count. Before trial the court discussed the offer with Garrett, but Garrett declined and proceeded to trial. A jury convicted Garrett as charged, and the trial court imposed a total sentence of eighty years. This appeal followed. Additional facts are set forth below where relevant.

## Discussion

### I.

Garrett contends that he was denied a fair trial under the state and federal constitutions because the trial judge failed to remain impartial. His argument focuses on the trial court's pre-trial statements in discussing the State's plea offer. The record shows that on the morning of Garrett's scheduled trial, the trial judge asked the State if it had made a plea offer to Garrett. The State responded that it had offered Garrett a guilty plea to a lesser dealing offense, as a Class B felony, with a ten-year sentence enhanced by an additional ten years for the habitual offender charge. Garrett told the court that he had rejected the offer. The court then questioned Garrett extensively about whether he understood the nature of the offer and the sentence he could receive if he was convicted as charged. After the court explained that Garrett would likely get the maximum eighty-year sentence, Garrett initially indicated that he would accept the plea. However, after reviewing a written draft of the State's offer, he declined, and the case proceeded to trial.[1]

Garrett contends that the trial court displayed its bias when, during the pre-trial

---

1. The pre-trial discussion that took place was as follows:

   THE COURT: Has the State made an offer to Mr. Garrett?

   PROSECUTOR: Yes, we have, Judge. The final offer we made was to the lesser included B felony of dealing. Ten years on that and ten years on the habitual offender count.

   THE COURT: So a total of twenty years?

   PROSECUTOR: Yes, and we dismissed the possession.

   THE COURT: You understand the offer Mr. Garrett?

   GARRETT: Yes, I do.

   THE COURT: You know what you're looking at if you get convicted at trial?

   GARRETT: Yes.

   THE COURT: What's that?

   GARRETT: I think eighty.

   THE COURT: Fifty to eighty years.

   GARRETT: Fifty to eighty.

   THE COURT: It's nonsuspendable. What do you want to do here?

   GARRETT: I was gonna take the jury.

   THE COURT: You understand that if you take the deal ... I understand that you have ten years on a parole violation too pending?

   GARRETT: Yes, sir.

   THE COURT: So, if you get that, plus the twenty here, you'll get fifteen years. What, you're forty-one, you'll be fifty-six when you got out. If you get convicted, you get the ten years on that, plus the eighty years on this. That's ninety years, it will be forty-five years you'll have to serve if you behave yourself. You'll be ninety-six, if you're still alive, when you get out. You understand that?

   GARRETT: Yes.

   THE COURT: You sure about what you want to do here?

   GARRETT: INAUDIBLE.

   DEFENSE COUNSEL: You don't have to necessarily get the whole ten.

   GARRETT: That's the most I can get?

   DEFENSE COUNSEL: Right.

   THE COURT: That's the most you can get on that. I don't know what they'll do. I have no control over that, none of us have any control over that. The worse case scenario if you take the deal is an additional real fifteen years.

   DEFENSE COUNSEL: Judge, one of the things that Mr. Garrett has mentioned to me is, one of the reasons why he might want to take this to jury as opposed to plea it is that he believes that if he takes the jury that he won't be waiving his

discussion, the judge threatened to impose the maximum sentence if Garrett proceeded to trial and was convicted. A threat Garrett maintains the court carried out

appeal rights. And perhaps on appeal something could be done where he would get less than twenty years. I have advised him that that's not likely, but.

THE COURT: Sir if you get convicted of the A felony, the dealing ... the A felony dealing, and the habitual, the minimum possible sentence that any Judge can give you is fifty years. That means I have to find mitigating circumstances to get down to there. Mitigating circumstances would be lack of criminal history, good work experiences, good life experiences. Looking at your criminal history, I haven't counted up the numbers, but it fills up three or four pages. It includes a death case of voluntary manslaughter, plus other crimes of violence, handguns, robberies. I don't know why you would think any judge is gonna find mitigating circumstances when in your past you've robbed people and you've killed people. Those are aggravating circumstances, which means your sentence goes up from the minimum fifty years up to as much as eighty. I'm telling you, if it's me and you get found guilty with this record you'll get the eighty years. You'll have to serve at least forty of that before you get out, regardless of what happens on your parole violation. Which means you'd be at the least, you're what, forty-one?

GARRETT: Forty-one now.

THE COURT: Than means you would be eighty-one years old when you got out if you get convicted. If you take the deal, you could be out as little as ten and no more than fifteen.

GARRETT: I um ... do they have that typed up?

DEFENSE COUNSEL: Hum?

GARRETT: Do they have that typed up?

DEFENSE COUNSEL: Do they have it typed up, he can write it up right now.

GARRETT: Write it up and let me read it.

DEFENSE COUNSEL: Can you write it up and let him read it?

THE COURT: Let him have a chance to read it.

R. at 100–03. After a brief recess, the discussion continued:

THE COURT: Mr. Garrett?

GARRETT: Yes, sir.

THE COURT: What are we doing here?

GARRETT: I'm going to accept the ... I'm gonna sign the plea.

THE COURT: Okay, go ahead and sign it there, we'll get copies made and we'll go through it. Mr. Garrett what are we doing?

GARRETT: I didn't do all this.

THE COURT: You didn't do it?

GARRETT: By me signing this, I'd be lying.

THE COURT: So, you want to go to trial today?

GARRETT: Yes, I'm going to trial. I'd be lying if I signed this. I know I'm between a rock and a hard place.

THE COURT: You understand what the State's evidence is gonna be?

GARRETT: Excuse me sir?

THE COURT: You understand what the State's evidence is gonna be?

GARRETT: Yes.

THE COURT: There's a confidential informant and a police officer who's gonna say that you did this and also say that when they arrested you you had the money in your shoe ... your sock?

GARRETT: Yes.

THE COURT: You don't have to answer this, but what's your defense gonna be?

GARRETT: Excuse me?

THE COURT: You don't have to tell us, you don't have to say a word, what's your defense gonna be? That the money magically appeared in your sock?

GARRETT: Excuse me?

THE COURT: What's your defense? Did the money just kind of magically appear in your sock, and you don't know how it got there?

GARRETT: I put that money in my sock. That's my money.

THE COURT: They're gonna have a photocopy of that money that they had copied before and after your arrest.

GARRETT: Yes.

DEFENSE COUNSEL: Actually Judge, the facts are that during the transaction, uh ... the person in the tape had to make change for a twenty. It was actually marked beforehand, so it's not the same buy money. So, the money that was actually found in Mr. Garrett's sock is not marked. It is on tape however, that uh ... change was made, the transaction was fifteen dollars and that was the amount of money that was found on Mr. Garrett. But, technically the money is not marked.

THE COURT: Okay. All right, so you want to go to trial?

GARRETT: Yes.

THE COURT: Take him back and get him dressed.

R. at 103–05. Thereafter, the trial commenced.

when it ordered him to serve the maximum sentence following his conviction. Garrett complains also that the court's conduct "undermined the fundamental fairness of the proceedings by ridiculing the defense, by intimidating Mr. Garrett and pressuring him to accept the plea offer...." Brief of Appellant at 11. Thus, Garrett essentially argues that the judge punished him for exercising his right to trial. *See Hill v. State*, 499 N.E.2d 1103, 1107 (Ind. 1986) ("It is well settled that to punish a person for exercising a constitutional right is 'a due process violation of the most basic sort.... Moreover, it is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant has chosen to stand trial rather than plead guilty.'") (quoting *Walker v. State*, 454 N.E.2d 425, 429 (Ind.Ct.App.1983)).

We do not condone the trial judge's inquiry and comments regarding Garrett's defense or the depth of the court's inquiry regarding Garrett's decision to go to trial.[2] Declaring to Garrett "I'm telling you, if it's me and you get found guilty with this record you'll get the [maximum] eighty years" was clearly inappropriate. There was at least the possibility that hearing this statement from the judge would carry more weight with Garrett than the same message when undoubtedly delivered by Garrett's counsel. Garrett resisted this additional improper pressure, but others may not. It may seem somewhat artificial to prevent a trial judge from making such direct predictions concerning a sentence that will be imposed, as opposed to outlin-

ing the parameters of permissible sentences. Nonetheless such conduct is not defensible in the name of candor.

■ Having said that, however, we must conclude that Garrett still cannot prevail. Where a defendant fails to object or otherwise challenge a trial judge's remarks, any alleged error is waived on appeal. *Cornett v. State*, 450 N.E.2d 498, 505 (Ind.1983) (holding that a defendant who failed to object to trial judge's comments and move for a mistrial waived review of claim that the judge failed to maintain impartiality); *see also Smith v. State*, 558 N.E.2d 841, 843 (Ind.Ct.App.1990) (finding that defendant waived review of his claim that he was entitled to a change of judge where he failed to argue the merits of his claim during a hearing before the trial court). Here, our examination of the record shows that Garrett did not object to the trial court's pre-trial comments nor did Garrett seek a change of judge following the discussion regarding the plea offer. This issue is thus waived for review. We also note that the record supports Garrett's eighty-year sentence. Garrett offered no mitigating evidence, and before pronouncing sentence, the trial court reviewed the pre-sentence investigation report and cited in detail Garrett's lengthy criminal history. Relying on Garrett's criminal history and the lack of mitigating evidence, the trial court enhanced Garrett's sentence. The court's findings regarding aggravating and mitigating circumstances are supported by the record and in turn support Garrett's sentence.[3]

---

2. In *Stacks v. State*, 175 Ind.App. 525, 372 N.E.2d 1201 (1978), our court of appeals observed that judicial participation in plea bargaining has been heavily criticized by courts and commentators. *Id.* at 535, 372 N.E.2d at 1208–09 (citing *Note, Plea Bargaining and the Transformation of the Criminal Process*, 90 HARV. L. REV. 564, 583–585 (Jan.1977); *United States v. Werker*, 535 F.2d 198 (2d Cir.1976); *Com. v. Evans*, 434 Pa. 52, 252 A.2d 689 (1969)).

3. Garrett also contends that the court enhanced his sentence based upon a prior rob-

bery conviction when in fact Garrett had not been convicted of robbery. Garrett points to a pre-trial comment wherein the judge referred to Garrett's criminal history and mentioned a robbery conviction. Garrett was apparently charged with robbery four times but never convicted. The record shows the trial judge's comment came during the pre-trial discussion when the judge had only cursorily reviewed Garrett's criminal history. The trial court's sentencing statement makes clear however that the judge did not enhance Garrett's sentence based upon a robbery conviction.

## II.

■ Garrett next contends that his adjudication as a habitual offender was improper. During the habitual offender phase of the trial, Garrett's counsel stipulated to the existence of the prior offenses charged by the State. Garrett argues that the stipulation was tantamount to a guilty plea, and the trial court's acceptance of the stipulation without advising him on various rights which would be waived by pleading guilty was erroneous. *See generally Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Ind.Code § 35–35–1–2(a).

■ Garrett cites no authority to support his claim that a factual stipulation can amount to a guilty plea. As we observed in *Whatley v. State*, 685 N.E.2d 48 (Ind. 1997) "a plea of guilty is a discrete judicial event that not only admits factual matters but also embodies significant procedural consequences." *Id.* at 49. A stipulation that seeks to establish certain facts does not constitute a guilty plea. *Id.* (finding that a stipulation as to the existence of a defendant's prior conviction used to enhance a handgun offense did not amount to a guilty plea). Such is the case here. The stipulation at issue only acknowledged that Garrett had been convicted of the prior offenses and sentenced on certain dates. Thus, it established only the fact that the prior offenses existed and did not amount to a guilty plea.

Our court of appeals has reached the same conclusion in a nearly identical case. In *Gann v. State*, 570 N.E.2d 976 (Ind.Ct. App.1991), the parties stipulated during the habitual offender phase that "the State had true and accurate copies of the prior judgments of conviction, that these convictions were felonies, that the sentences imposed were reflected by the documents, and that the fingerprints provided were in fact Gann's fingerprints." *Id.* at 978. As Garrett argues here, the defendant in *Gann* contended that the stipulation amounted to a guilty plea that required the trial court to question him regarding his rights and consent to the stipulation. *Id.* at 979.

In rejecting the defendant's claim, the court of appeals stated:

In this case, trial counsel did not stipulate that Gann was a habitual offender or that the evidence stipulated was sufficient to determine Gann was an habitual offender, but rather stipulated as to the evidence underlying the status. The State had witnesses in court, and was prepared to introduce the exhibits. Trial counsel presented a closing argument, and the evidence was submitted to the jury for its consideration. The jury deliberated for an hour to an hour and a half before reaching its decision. The stipulation in this case was not the equivalent of a guilty plea. . . .

*Id.* We agree with the court of appeals' analysis in *Gann* and believe it applies in this case. Contrary to Garrett's claim, his counsel did not stipulate that Garrett was a habitual offender, only to some of the facts underlying the status. As the State points out, the stipulation did not assent to all of the elements of the habitual offender charge. The State still had the burden at trial of proving that the offenses were unrelated. *See* Ind.Code § 35–50–2–8(d) ("A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions."). Moreover, both the State and Garrett's counsel presented opening and closing argument during the habitual offender phase, and the case was submitted to the jury for its consideration. The stipulation was not the equivalent of a guilty plea and did not require the trial court to advise Garrett on various rights which would be waived by pleading guilty.

## Conclusion

Judgment affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.